NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-4565-12T4

JORDANA ELROM,

    Plaintiff-Respondent,

v.

ELAD ELROM,

    Defendant-Appellant.

_____

> **APPROVED FOR PUBLICATION**
>
> **February 23, 2015**
>
> **APPELLATE DIVISION**

> Submitted November 3, 2014 - Decided February 23, 2015
>
> Before Judges Lihotz, St. John and Rothstadt.
>
> On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FM-02-2214-11.
>
> Townsend, Tomaio & Newmark, LLC, attorneys for appellant (John E. Clancy, on the briefs).
>
> Jordana Elrom, respondent pro se.

The opinion of the court was delivered by

LIHOTZ, P.J.A.D.

Defendant, Elad Elrom, appeals from provisions set forth in a November 19, 2012 final judgment of divorce (FJOD), entered following trial.  He challenges the imputation of income to the parties for the purpose of calculating child support and limited duration alimony payable to plaintiff Jordana Elrom.  Defendant

also challenges supplemental child support added for child care and extracurricular activities, the allocation of assets equitably distributed, and appeals from a February 21, 2013 order denying reconsideration of the FJOD's terms.

Following our review of the issues raised on appeal, in light of the record and the applicable law, we agree the judge erred in increasing child support by work-related child-care costs during a period of plaintiff's unemployment and the cost of the children's everyday extracurricular activity expenses, which generally are included in the amount of child support. In all other respects, including the imputation of income, we affirm.

I.

The facts pertinent to our review are taken from the five-day trial record. The parties appeared self-represented and presented testimony regarding their incomes, along with fact testimony from plaintiff's father and expert testimony. Numerous documents were introduced into evidence regarding the parties' respective incomes, expenses, and assets.

The parties, who are now thirty-eight, were married in February 2005 and separated in September 2010. They have two young children, who were born in 2008 and 2010. Prior Family Division proceedings between the parties were consolidated into

this matter (FD-02-435-11) or dismissed. Although the parties litigated custody and parenting time at trial, they successfully mediated an agreement, largely resolving custody issues.

Plaintiff is an attorney, licensed to practice in New York and New Jersey. When she married defendant, she worked in Newark earning an annual salary of $102,000. Thereafter, she took a position with a New York firm, earning $175,000 per year. In early 2008, just prior to the birth of the parties' first child, plaintiff was laid off. She testified the parties agreed she would stay home to raise the children, possibly working part-time. In 2009, plaintiff commenced part-time employment, working ten to fifteen hours per week. When the parties separated, she earned $67.50 per hour, working approximately twenty-six hours per week. Plaintiff next secured an associate's position earning $80,640, but lost her job prior to trial. Asserting child-care obligations required she "focus her job search on New Jersey firms," plaintiff intended to seek a New Jersey position and asked "the [c]ourt impute [to] her a salary of $80,640.00."

Defendant is a software engineer, technical writer, web developer, and entrepreneur. In the past, he held positions with Sigma, HBO, Weight Watchers, and MTV. During an earlier non-dissolution matter, he earned $193,375 per year as a

consultant for HBO. Before trial, he changed jobs, and was employed as the chief technical officer for ChatAnd Inc. (ChatAnd), earning a base salary of $120,000, with potential to earn as much as $295,000. Defendant also owned Elrom LLC, which performed consulting services, sponsored an annual technology trade show, and participated in several start-up companies.

At trial, plaintiff produced documents evincing defendant's income, and explained he was not compliant with her discovery demands. Plaintiff asserted during the marriage, defendant received income from "clients on the side" and royalties from three books he authored. Plaintiff also discovered defendant started a company in Las Vegas on February 2, 2012, called Effective Idea, LLC, and withdrew funds from Elrom LLC's account, which he transferred to an account at Banca Privada d'Andorra. Defendant stipulated the Andorra account held $67,978.

As to the marital standard of living, plaintiff explained the parties lived an "upper middle class, at times, lavish lifestyle" before the children were born. They owned a New York City apartment. When they moved to Englewood in anticipation of the birth of their second child, they rented their apartment. After separating, defendant moved to New York City, while plaintiff and the children moved into her parents' home in

Montville.[1]  Plaintiff had residential custody of the children. She sought alimony and listed her actual expenses "to the penny" in an amended case information statement (CIS).

Larry Frankel, CPA, CFF, plaintiff's expert forensic accountant, examined monies deposited into the parties' various bank accounts to calculate defendant's annual income.  Frankel concluded deposits into Elrom LLC's account from January 2009 to February 2012, totaled $903,241.  Reducing the sums by an estimated twenty to thirty percent for overhead, he asserted profit, exclusive of taxes, amounted to seventy to eighty percent.

Defendant countered with testimony from his forensic employability expert Gary Young, whose vocational evaluations addressed the likely earnings of the parties.  Young's reports were not provided in the appellate record.

Young concluded defendant was likely to earn $120,000 annually as a software engineer and technical writer.  He based this opinion on his review of defendant's resume and a telephone interview, but acknowledged he was not provided with defendant's ChatAnd contract, and did not consider defendant's earning capacity as a consultant.

---

[1]  Plaintiff testified she and the children were evicted from the Englewood apartment because defendant failed to satisfy his portion of the rent.

Young also offered testimony regarding plaintiff's employability, although he did not interview her. After considering her degrees and bar admissions, he conducted research using Internet sources and suggested her earning possibilities, primarily in New York City, ranged from "$108,740 to $177,850." Young did not factor parenting responsibilities, the children's special needs, or day care availability into this calculus.

Defendant next offered Jonathan Klopchin, a credentialed IT recruiter. His report is not included in the record. Evaluating defendant's experience with "Flash, Flex, Front and implementation" technologies, which Klopchin explained were declining in demand, he asserted a full-time Flex engineer could make $100,000 to $150,000, although some Flex developers could garner more than $200,000, which was "more the exception than the rule." He stated a Flex consultant would be "fortunate to get [$]90 an hour" and "a lead developer" could earn $165,000.

During defendant's direct testimony, he asserted the actual gross receipts of Elrom LLC for 2010 were merely $145,000. He argued Frankel's use of deposits inflated estimated income because it included rental receipts from the New York City apartment and funds withdrawn but re-deposited. However, defendant later admitted he received receipts of $19,000 in

royalties and $88,000 from consulting, and spent $11,000 in payroll expenses. The sums, along with his salary, make his total 2010 income $252,000. Defendant discussed his reported receipts in 2011, as captured on Schedule C of his federal tax return, which totaled $250,000.[2] He mentioned $206,000 in consulting fees from HBO, a position he lost. Defendant also asserted ChatAnd just terminated his services, and his last paycheck was July 27, 2012. Defendant suggested $120,000 per year should be imputed to him, as opined by Young.

Following trial, the judge issued a written opinion granting plaintiff's request for divorce. Addressing the collateral issues arising upon the dissolution of the marriage, the judgment awarded plaintiff limited duration alimony for three years in the amount of $1,000 per week "based upon the differential in their earnings, [p]laintiff's needs and [d]efendant's ability to pay." The judgment further ordered defendant to pay child support in the amount of $697 per week, which included insurance premiums and work-related child care, plus fifty percent of the children's uncovered medical costs, exceeding $250 per child, and fifty percent of the children's

---

[2] Defendant introduced several documents during his testimony; however, the record exhibits do not contain the trial markings making it difficult to reconcile his testimony with the record.

extracurricular and sporting activity fees, provided defendant consents to their participation in advance. Defendant received an $8,702 credit for overpayment of work-related child-care expenses.

In calculating support, the judge found plaintiff's income was represented by her last full-time job, as an associate attorney in New Jersey, and imputed $80,640 per year. The judge rejected defendant's argument to limit his earning ability to $120,000. Rather, after considering defendant's historic earnings, which were "readily ascertainable from his limited liability company and personal bank statements over the past three years . . . as examined and quantified by [p]laintiff's forensic accounting expert, [Frankel]," the judge imputed gross income to defendant of $230,731.42 per year, calculating the three-year average gross receipts and factoring an "expense-out rate of 20%."[3]

Equitably distributing the parties' marital assets, she ordered: an equal division of the bank account associated with rental receipts from their former New York City apartment; plaintiff receive $11,000 to equalize the values of the parties'

_____

[3] The judge found defendant's business gross receipts were $286,313.71 in 2009, $321,614.41 in 2010, and $257,314.69 in 2011, for an average of $288,414.27 over this three-year period.

respective automobiles; plaintiff retain her three retirement accounts and personal property; and defendant retain Elrom LLC, any other start-up companies in which he held an interest, and his personal property.

Both parties moved for reconsideration of the provisions of the FJOD. The motions were denied and this appeal followed.[4]

On appeal, defendant attacks the imputed income levels for each party, arguing the income level imputed to him was too high and the level imputed to plaintiff was too low. Defendant also argues the judge erred in adding child-care and the children's extracurricular activity costs as additional child support. Finally, defendant challenges the equitable division of the parties' assets. We consider these issues.

## II.

Our review of a trial judge's factual findings, following a non-jury trial, is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). Generally, "findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Id. at 411-12. In matrimonial matters, this "[d]eference is especially appropriate when the evidence is largely testimonial and involves questions of credibility," id.

---

[4]    On July 25, 2013, we granted defendant's motion to file his appeal as within time.

at 412 (citation and internal quotation marks omitted), because the trial judge has "a feel of the case" and is in the best position to "make first-hand credibility judgments about the witnesses who appear on the stand." N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008). Review of the cold record alone "can never adequately convey the actual happenings in a courtroom." N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 448 (2012) (citing E.P., supra, 196 N.J. at 104).

Reversal is warranted only when a mistake must have been made because the trial court's factual findings are "'so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice . . . .'" Rova Farms Resort, Inc. v. Investors Ins. Co. of Am., 65 N.J. 474, 484 (1974) (quoting Fagliarone v. Twp. of N. Bergen, 78 N.J. Super. 154, 155 (App. Div.), certif. denied, 40 N.J. 221 (1963)). Consequently, when a reviewing court concludes there is satisfactory evidentiary support for the trial court's findings, "'its task is complete and it should not disturb the result . . . .'" Beck v. Beck, 86 N.J. 480, 496 (1981) (quoting State v. Johnson, 42 N.J. 146, 162 (1964)). "Deference is appropriately accorded to factfinding; however, the trial judge's legal conclusions, and the application of those conclusions to the facts, are subject to

our plenary review." Reese v. Weis, 430 N.J. Super. 552, 568 (App. Div. 2013). Finally, legal conclusions are always reviewed de novo. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

A.

Defendant urges income imputation is reserved for parties who, without just cause, are intentionally and voluntarily unemployed or underemployed. Because he was working, he argues his circumstances do not trigger income imputation and his salary should have been accepted as an appropriate earning level when fixing support. Defendant also argues imputation principles require an increase in plaintiff's income, not mere acceptance of the modest salary she last earned. We reject the legal premise as applied, and note the facts of record belie defendant's contentions.

"'Imputation of income is a discretionary matter not capable of precise or exact determination[,] but rather require[es] a trial judge to realistically appraise capacity to earn and job availability.'" Gnall v. Gnall, 432 N.J. Super. 129, 158 (App. Div. 2013) (quoting Storey v. Storey, 373 N.J. Super. 464, 474 (App. Div. 2004)), certif. granted, 217 N.J. 52 (2014). While an "abuse of discretion . . . defies precise definition," we will not reverse the decision absent a finding

the judge's decision "rested on an impermissible basis," considered "irrelevant or inappropriate factors," Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (citations and internal quotation marks omitted), "failed to consider controlling legal principles or made findings inconsistent with or unsupported by competent evidence." Storey, supra, 373 N.J. Super. at 479.

Certainly, the court is authorized to impute income for the purpose of determining child support when a parent is found to be voluntarily unemployed or underemployed without cause. See Caplan v. Caplan, 182 N.J. 250, 268-70 (2005) (stating parent's ability to earn income, or "his [or her] human capital," should be "theoretically activated for the purpose of evaluating his [or her] support obligation" and the amount of income that "should be imputed to him [or her]"). "'In treating the matter of support, our courts have always looked beyond the [parent's] claims of limited resources and economic opportunity. They have gone far to compel a parent to do what in equity and good conscience should be done for [the] children.'" Lynn v. Lynn, 165 N.J. Super. 328, 341 (App. Div.) (quoting Mowery v. Mowery, 38 N.J. Super. 92, 102 (App. Div. 1955), certif. denied, 20 N.J. 307 (1956)), certif. denied, 81 N.J. 52 (1979). Thus, a "'court has every right to appraise realistically [a] defendant's

potential earning power,'" ibid. (quoting Mowery, supra, 38 N.J. Super. at 102), and examine "potential earning capacity" rather than actual income, when imputing the ability to pay support. Halliwell v. Halliwell, 326 N.J. Super. 442, 448 (App. Div. 1999).

This authority is incorporated in the New Jersey Child Support Guidelines (Guidelines). See R. 5:6A (adopting Guidelines set forth in Appendix IX-A to the Court Rules). The Guidelines state:

> [i]f the court finds that either parent is, without just cause, voluntarily underemployed or unemployed, it shall impute income to that parent according to the following priorities:
>
> a. impute income based on potential employment and earning capacity using the parent's work history, occupational quali-fications, educational background, and prevailing job opportunities in the region. The court may impute income based on the parent's former income at that person's usual or former occupation or the average earnings for that occupation as reported by the New Jersey Department of Labor (NJDOL);
>
> b. if potential earnings cannot be determined, impute income based on the parent's most recent wage or benefit record . . . .
>
> [Child Support Guidelines, Pressler & Verniero, Current N.J. Court Rules, comment

12 on Appendix IX-A to <u>R.</u> 5:6A at 2635 (2015).]

These legal precepts equally apply when establishing a party's obligation to pay alimony. <u>See</u> <u>Tannen v. Tannen</u>, 416 <u>N.J. Super.</u> 248, 261 (App. Div. 2010) (noting a trial judge "may impute income" in the process of "determining an appropriate alimony award"), <u>aff'd o.b.</u>, 208 <u>N.J.</u> 409 (2011); <u>Storey</u>, <u>supra</u>, 373 <u>N.J. Super.</u> at 474-80 (imputing income to obligor based on earning capacity despite actual job earning a lower income). "[O]ne cannot find himself in, and choose to remain in, a position where he has diminished or no earning capacity and expect to be relieved of or to be able to ignore the obligations of support to one's family." <u>Arribi v Arribi</u>, 186 <u>N.J. Super.</u> 116, 118 (Ch. Div. 1982). <u>See also</u> <u>Gnall</u>, <u>supra</u>, 432 <u>N.J. Super.</u> at 159 (affirming imputation of income to party based on past salary as computer programmer despite a desire to work as a teacher for lower pay).

Further, "failure . . . to provide adequate financial information place[s] the hearing judge in a position where he [or she] ha[s] to . . . realistically impute income." <u>Tash v. Tash</u>, 353 <u>N.J. Super.</u> 94, 99 (App. Div. 2002). Imputation may also be justified when examining income reported by self-employed obligors, who control the means and the method of their earnings. <u>See</u> <u>Donnelly v. Donnelly</u>, 405 <u>N.J. Super.</u> 117, 128-29

14

(App. Div. 2009) (noting a self-employed obligor is "'in a better position to present an unrealistic picture of his or her actual income than a W-2 earner'" (quoting <u>Larbig v. Larbig</u>, 384 <u>N.J. Super.</u> 17, 23 (App. Div. 2006))); <u>Platt v. Platt</u>, 384 <u>N.J. Super.</u> 418, 426-27 (App. Div. 2006) (affirming court's rejection of last annual income of self-employed defendant in favor of imputing income). Accordingly, "[b]oth when setting child support and in reaching a proper alimony award, a judge must examine not only each party's income, but also his or her earning ability." <u>Gnall</u>, <u>supra</u>, 432 <u>N.J. Super.</u> at 159.

We focus on the facts supporting imputation. Contrary to defendant's current claims of full-time employment, he specifically testified he was released from his position at ChatAnd. When pressed on whether his circumstances would change once ChatAnd received requested financing, defendant insisted his employment was terminated.

Historically, defendant received wages and other payments from one main company, such as Sigma, HBO, and ChatAnd, along with royalties and separate consulting fees. The level of earnings proffered by Frankel, who analyzed defendant's business deposits, along with defendant concessions, evinced his 2010 gross income of at least $252,000; 2011 fees from HBO alone were $206,000 and reported gross receipts totaled $250,000.

Additional unrefuted proofs showed defendant received supplemental earnings, not only from self-employment through consulting, but also reoccurring royalty receipts.

Significant to rejecting defendant's suggested earnings level was the trial judge's credibility findings. In light of the documented historic earnings, the judge found defendant "attempted to portray himself as lacking the skills and education to sustain a salary in the $250,000.00 range, when all the evidence is to the contrary." Further, she rejected as unsupported defendant's claim he accepted the lower salary position at ChatAnd to spend more time with the children. Several times in her opinion she found defendant was being dishonest with the court.

The judge considered and rejected the testimony of the defendant's experts. Young's opinion defendant might earn $80,000 to $100,000 was labeled "borderline preposterous in light of the documented proofs that [d]efendant's income has been 2.5 to 3 times more [than that amount] for the past three years." Young ignored defendant's employability and earnings as a consultant, and his employment contract, allowing possible earnings up to $295,000. Even Klopchin testified defendant's salary range was higher than defendant's and Young's estimates. Nevertheless, the judge rejected the expert's suggested earning

level simply because for years, defendant's salary always exceeded Klopchin's estimates.

In light of all of this evidence, we reject as factually unsubstantiated and legally insufficient the notion imputation does not apply when determining this defendant's income because he held a full-time position. We determine the evidence supports the judge's findings that defendant's field of expertise, as well as his employment and salary history, demonstrate a substantial earning capacity, well in excess of his last documented base salary of $120,000 per year, and provided a sound basis to impute additional income.

We further discern no abuse of discretion in using a three-year average of defendant's earnings from all sources, demonstrated by deposits into his business account. Overall, we conclude this was a fair and reasonable methodology to fix an appropriate level of income for consideration of support based on "sufficient credible evidence present in the record after consideration of the proofs as a whole." Rolnick v. Rolnick, 262 N.J. Super. 343, 360 (App. Div. 1993) (citation and internal quotation marks omitted).

Defendant alternatively argues the court should have appointed an expert to determine his earning capacity, because Frankel's use of deposits and an estimated overhead expense was

hypothetical and failed to consider his actual earnings and expenses. We disagree.

Although the court may appoint an expert to resolve an economic issue, R. 5:3-3(c), defendant had an affirmative obligation to provide the requested discovery, which included proof of his earnings and expenses through employment and his closely held businesses. Defendant controlled the documentation on this issue and chose not to fully reveal all the facts. Defendant even chose to not provide relevant facts to his retained experts, resulting in a distorted analysis. Defendant's lack of credibility, demonstrated by his refusal to disclose information or respond to inquiries, was properly weighed in rejecting his claims of limited earnings. See Cesare, supra, 154 N.J. at 412. Moreover, the judge's reliance on plaintiff's exhibits, Frankel's expert opinion, and defendant's own admissions, provided substantial credible evidence to impute income without the need to appoint a court expert.

Defendant next argues the judge abused her discretion when imputing income to plaintiff. Defendant notes plaintiff earned as much as $175,000 as an attorney in New York City. Further, he relies on Young's testimony stating attorneys in New York

City can earn between $108,000 and $178,850. He thus asserts use of $80,640 per year was error. We reject these arguments.

At trial, plaintiff was unemployed after being "dismissed" from her job. Prior to obtaining that position, she worked part-time. Her last full-time New York City job was in 2008, four years prior to trial. During the intervening years, plaintiff bore two children and, since separation served as the primary residential parent. The parties' children are young: one is seven and has special medical needs because the child is "severely allergic to dairy, eggs, nuts and seeds[,]" and the other is only four. Defendant's parenting time, set forth in the FJOD, is limited to seven and one-half hours on alternate Saturdays and Sundays, with no parenting time during the workweek. Taken together, these facts support the imputed income level determined by the trial judge.

Considerations involving children must be weighed when imputing income. The first factor listed by the Legislature in guiding a judicial determination of a fair child-support award is serving the "[n]eeds of the child . . . ." N.J.S.A. 2A:34-23(a)(1). Also, the Guidelines discuss the need to account for young children's needs when imputing income to the parent of primary residence, stating:

> In determining whether income should be imputed to a parent and the amount of such

income, the court should consider: (1) what the employment status and earning capacity of that parent would have been if the family had remained intact or would have formed, (2) the reason and intent for the voluntary underemployment or unemployment, (3) the availability of other assets that may be used to pay support, and (4) the ages of any children in the parent's household and child-care alternatives. . . . When imputing income to a parent who is caring for young children, the parent's income share of child-care costs necessary to allow that person to work outside the home shall be deducted from the imputed income.

[Pressler & Verniero, supra, comment 12 on Appendix IX-A to R. 5:6A at 2635.]

On this issue, the Supreme Court has "noted that '[t]he key to both the [G]uidelines and the statutory factors is flexibility and the best interest of children.'" Caplan, supra, 182 N.J. at 266 (first alteration in original) (quoting Pascale v. Pascale, 140 N.J. 583, 594 (1995)). The importance of addressing a child's needs because of health or tender years may dictate the proximity of parental employment.

Finding plaintiff accessible to address the children's needs "paramount," the judge determined plaintiff's decision to limit her employment search to New Jersey was reasonable. Plaintiff's sole responsibility for the children's care during the workweek and a need to be available if the older child suffers anaphylaxis support this decision. We agree the children's needs were properly weighed and found to limit

plaintiff's work schedule and confine her employment search to New Jersey.

Young's testimony regarding plaintiff's earning capacity was rejected by the trial judge for several reasons. First, the trial judge noted Young had no experience in the legal field. Second, he "conducted little if no research [and] failed to test plaintiff," "admitting that he did nothing more than an internet engine search of New York job opportunities." Third, Young "failed to consider [p]laintiff's parenting responsibilities and desire to work within New Jersey to remain in close proximity to the children," and, therefore, eliminated consideration of New Jersey opportunities. Finally, Young's evaluation did not examine "[p]laintiff's skill set [] in the financial and banking areas," a legal specialty he admitted put her at "a disadvantage in today's market," because of limited available positions.

We determine the amount of wages imputed to plaintiff was based on her immediate prior position with a large New Jersey firm, headquartered in a major city. This is appropriate. Young's testimony was properly rejected as a generalized statement of New York City attorney wages, rather than an opinion of what plaintiff could earn. Accordingly, we find no abuse of discretion in imputing plaintiff's income as guided by her past wages.

Challenging the child support award, defendant asserts the judge erred by requiring him to contribute to what he characterized as "exorbitant child-care expenses" at a time plaintiff was unemployed, and to pay, as additional support, one-half the cost of the children's extracurricular activities. Plaintiff acknowledged she was not working, but insisted "[t]he need for childcare was evident," rationalizing she was "consumed with an intense, though unsuccessful search for employment" and "preparation for trial," which she characterized as "a full-time job." Finally, plaintiff urged the need for child care to prevent disruption to the children's "established routine" and because preschool "space was limited," making it "impossible to obtain a spot again if either [child] was taken out for a period of time."

Following our review, we find plaintiff's assertions unavailing. We agree with defendant the judge erroneously added child-care and extracurricular activity costs as additional support.

The Guidelines state: "The average cost of child care, including day camp in lieu of child care, is not factored into in the schedules. The net cost (after tax credits) of work-related child care should be added to the basic obligation if

incurred." Pressler & Verniero, supra, comment 9 on Appendix IX-A to R. 5:6A at 2632. The Guidelines do not sanction child-care expenses as additional support when a party is unemployed. Ibid. Rather, the Guidelines' recognition of child care is factored when imputing income to the custodial parent. Pressler & Verniero, supra, comment 12 on Appendix IX-A to R. 5:6A at 2635. Thus, an equitable adjustment to the custodial parent's imputed earnings accounts for the economic reality of parental employment.

As to the cost of children's activities, the Guidelines specify a child support award includes entertainment expenditures, specifically "[f]ees, memberships and admissions to sports, recreational, or social events, lessons or instructions, movie rentals, televisions, mobile devices, sound equipment, pets, hobbies, toys, playground equipment, photographic equipment, film processing, video games, and recreational, exercise or sports equipment." Pressler & Verniero, supra, comment 8 on Appendix IX-A to R. 5:6A at 2631-32. Guidelines support may be supplemented by court approved extraordinary expenses, which are

> predictable and recurring expenses for children that may not be incurred by average or intact families such as private elementary or secondary education, special needs of gifted or disabled children, and NCP/PAR time transportation expenses. The

A-4565-12T4

addition of these expenses to the basic
obligation must be approved by the court.
If incurred, special expenses that are <u>not
predictable and recurring</u> should be shared
by the parents in proportion to their
relative incomes (i.e., the sharing of these
expenses should be addressed in the general
language of the order or judgment). Special
expenses not included in the award should be
paid directly to the parent who made or will
make the expenditure or to the provider of
the goods or services.

[Pressler & Verniero, <u>supra</u>, comment 9 on
Appendix IX-A to <u>R.</u> 5:6A at 2633.]

Finally, use of the Guidelines is rebuttable, as "[t]he
[G]uidelines may be modified or disregarded by the court []
where good cause is shown," including "the presence of other
relevant factors which may make the [G]uidelines inapplicable or
subject to modification . . . ." <u>R.</u> 5:6A.

In her opinion, the trial judge did not explain why she
deviated from the Guidelines by adding child-care and
extracurricular activity costs as supplemental support.
Reviewing the record we find plaintiff's assertions of need were
not evidentially supported; they merely reflect her opinion.
Such testimony fails to establish the "good cause" necessary for
disregarding the Guidelines provisions. <u>Ibid.</u> Further, the
record is silent on a timeline for plaintiff's resumption of
full-time employment, or her specific efforts to resume working.
In light of this record, we do not find a legal basis to require

payment of child-care expenses. The costs could be added as additional support once plaintiff resumes employment. At the same time, the court's calculation of child support failed to reduce plaintiff's imputed income by her share of imputed child-care expenses.

In her merit's brief, plaintiff seeks to validate the inclusion of child-care expenses by suggesting the sums represent extra support authorized because the parties' incomes exceed the maximum net income to which the Guidelines apply. See Pressler & Verniero, supra, Appendix IX-F to R. 5:6A at 2708 (showing the maximum combined net weekly income of parents listed on the schedule for computing Guidelines support is $3,600). Plaintiff correctly states the judge has discretion to award supplemental support when net income exceeds the specified gross income threshold of $187,200.[5] See Pressler & Verniero, supra, comment 20 on Appendix IX-A to R. 5:6A at 2645. See also Isaacson v. Isaacson, 348 N.J. Super. 560, 579-80 (App. Div.) ("We have generally recognized that where the parties have the financial wherewithal to provide for their children, the

_____

[5]   The Guidelines provide "the court shall apply the [G]uidelines up to $187,200 and supplement the [G]uidelines-based award with a discretionary amount based on the remaining family income (i.e., income in excess of $187,200) and the factors specified in N.J.S.A. 2A:34-23." Pressler & Verniero, supra, comment 20 on Appendix IX-A to R. 5:6A at 2645.

children are entitled to the benefit of financial advantages available to them. . . . Children are entitled to not only bare necessities, but a supporting parent has the obligation to share with his children the benefit of his financial achievement." (citations omitted)), certif. denied, 174 N.J. 364 (2002). However, the judge's opinion, although thoroughly addressing the underpinnings supporting her conclusion on other issues, is silent on the need for or basis of imposing supplemental support.

"Rule 1:7-4 requires a judge to provide findings of fact and conclusions of law on every [decision] decided by a written order that is appealable by right." Fodero v. Fodero, 355 N.J. Super. 168, 170 (App. Div. 2002). See R. 1:7-4 (requiring a trial judge to accompany all opinions with findings of fact and conclusions of law). The omission of critical factual findings, supporting the basis to supplement the Guidelines support award, impedes our review and requires a remand limited to this issue. See Ducey v. Ducey, 424 N.J. Super. 68, 74 (App. Div. 2012).

### C.

Defendant next suggests the court failed to make adequate findings of fact and conclusions of law regarding its distribution of the parties' marital property. Defendant urges reversal of FJOD provisions permitting plaintiff to retain her

retirement accounts and permitting each party to retain the marital property in his or her possession. We reject these arguments.

"[T]he goal of equitable distribution . . . is to effect a fair and just division of marital [property]." Steneken v. Steneken, 183 N.J. 290, 299 (2005) (citation and internal quotation marks omitted). To fashion an equitable distribution award, the trial judge must identify the marital assets, determine the value of each asset, and then decide "how such allocation can most equitably be made." Rothman v. Rothman, 65 N.J. 219, 232 (1974). In addition, the judge must consider, but is not limited to, the sixteen statutory factors set forth in N.J.S.A. 2A:34-23.1. Fashioning an equitable distribution of marital assets and debts requires more than simply "mechanical division"; it requires a "weighing of the many considerations and circumstances . . . presented in each case." Stout v. Stout, 155 N.J. Super. 196, 205 (App. Div. 1977).

The trial judge properly reviewed all the evidence and performed the three-step Rothman analysis. Specifically discussing plaintiff's IRA and two 401(k) accounts, the judge noted "significant portions," that is two of three accounts, were "pre-marital," and not subject to equitable distribution. See Painter v. Painter, 65 N.J. 196, 214 (1974) ("[A]ny property

27

owned . . . at the time of marriage will remain [] separate property of such spouse and . . . will not qualify as an asset eligible for distribution."). The third account resulted from a job held for approximately fourteen months. The court acknowledged the exact values of plaintiff's retirement assets were "[u]nknown" and, also stated "[n]o evidence was presented as to the value of [d]efendant's . . . companies."

Defendant identifies nothing in this record to refute the judge's conclusions the assets held in the parties' respective possession had limited value and, therefore, should be offset. Her opinion noted "the parties agree that there is little by way of assets or liabilities to divide." On this record, we cannot conclude the judge erred in implementing the practical approach of offsetting these minimal assets.

Regarding personal property, the parties separated in 2010. Each argued the other took significant personalty. The judge found the parties' respective assertions of undivided assets were unsupported. Specifically, defendant offered "[n]o proofs as to the value of the furniture or wedding gifts" he claimed plaintiff took, and plaintiff did not provide support for her claims defendant retained a Rolex watch, a Tiffany wedding band, and expensive electronics (although she produced an email exchange showing defendant took the marital bedroom and dining

set).  Following review, with the proofs in equipoise, we find no error in denying additional relief.  <u>Pacifico v. Pacifico</u>, 190 <u>N.J.</u> 258, 269 (2007).

In light of our opinion, we need not separately review the appeal of the order denying reconsideration.  As noted, the judge's findings regarding imputation of income to fix support will not be disturbed, except sums added as supplemental support, which must be vacated.  We reverse that limited provision of the FJOD and remand for further review.  On remand, the judge must consider the propriety of adding child-care costs and whether good cause for a separate allocation of specific extracurricular activities is warranted.  To the extent defendant paid unsupported child-care or activity expenses, the judge shall determine the applicable credit and the method for repayment.  Finally, we reject claims of error in the FJOD's provisions providing for equitable distribution.

Affirmed in part, reversed, and remanded in part.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4565-12T4