**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0558-15T1

NEWTON G. MOODIE,

    Plaintiff-Respondent,

v.

CAROLYN RICHARDS MOODIE,

    Defendant-Appellant.

_____

Submitted February 28, 2017 — Decided August 1, 2017

Before Judges Espinosa and Guadagno.

On appeal from the Superior Court of New
Jersey, Chancery Division, Family Part, Essex
County, Docket No. FM-07-1032-09.

Kiernan & Campbell, attorneys for appellant
(Jean R. Campbell, on the brief).

Newton G. Moodie, respondent pro se.

PER CURIAM

    Defendant appeals from orders that terminated plaintiff's obligation to pay her alimony and maintain life insurance for her benefit and denied her motion for reconsideration. We affirm.

On June 21, 2010, plaintiff and defendant were divorced and entered into a matrimonial settlement agreement (MSA) that was incorporated into their final judgment of divorce.

According to the MSA, plaintiff was earning $55,000 from his employment as a teacher and defendant was earning $12,000 as a substitute teacher. The parties agreed that, beginning on June 23, 2010, plaintiff would pay $965 per month in alimony to defendant for the first twenty-four months, and $1,000 every month after that until defendant died or remarried. Both parties were required to exchange their end-of-year pay stubs, tax returns, and all other proofs of income annually.

The MSA also required defendant to provide plaintiff proof "of her efforts to find new employment and her job search" and

> no later then [sic] every six months, commencing November 1, 2010, proof of her good faith effort to utilize her recently earned M.B.A. Degree to obtain higher paying employment. Said proof shall consist of a listing of jobs applied for and persons contacted. [Plaintiff] may move before the Court to seek relief in the form of reduction or termination of alimony, in the event [defendant] fails to comply and/or make a good faith effort to obtain higher paying employment.

The MSA is silent on what "higher paying employment" means or what would happen if she obtained such employment.

In 2011, plaintiff made application to decrease his alimony obligations. The trial judge denied his request but required defendant to provide plaintiff "with a list of job applications as required under the parties' [M]SA" and "proof in writing of interviews that she has every two weeks until she is employed full time."

In August 2013, plaintiff filed an application to terminate alimony, claiming defendant violated the MSA by "fail[ing] to seek meaningful employment" and her "job search [was] inadequate and restrictive with a focus on managerial and sales/marketing positions, ignoring other potential areas." Plaintiff also claimed his alimony obligation was "burdensome and cause[d] significant financial, emotional and physical challenges." Defendant opposed plaintiff's motion and cross-moved, asserting she was compliant with the MSA.

By order dated October 4, 2013, the trial judge directed defendant to provide plaintiff and the court "a list of job searches, interviews and who [she] has spoken to about seeking employment" within two weeks of the order. Both parties were ordered to provide each other and the court their tax returns for each year since the divorce.

On November 1, 2013, the trial judge held a conference with the parties, with defendant appearing by telephone. The judge

observed that defendant's response to his prior order reflected that "every two weeks or so, there is some kind of job contact" and stated, "that's not the kind of diligence that the Court expects to see." The judge advised he would "need to impute income to [defendant] based on what [he] think[s] [her] earning power is." Plaintiff asked the court to give defendant a year in which to make the effort required by the court. The judge welcomed the suggestion and emphasized to defendant,

> [I]t's very important that you understand the following. You need to, at least in my eyes and I think in [plaintiff's] eyes as well, step up your efforts to find a job. . . . Second of all . . . you need to look in places like the school districts since you've been working as a substitute teacher.

The trial judge said he would enter an order that required defendant to make an average of five job searches a week, amounting to 260 job searches over the course of the year, representing "real diligence." The judge also advised defendant that to show she is "looking in good faith," she had to expand her search to include jobs that "may be somewhat below [her] qualifications."

The order stated,

> Defendant shall perform at least 5 job searches per week. Once per month, Defendant shall provide Plaintiff with a list of the name of the employer with whom she has spoken, the job for which she applied, the date of the application and the contacts with whom she has corresponded while seeking employment. . . .

4                                          A-0558-15T1

> Defendant shall expand her job search to employment which is below her qualifications as well as jobs for which she is qualified.

In October 2014, plaintiff filed an application to terminate his alimony and life insurance obligations to defendant, claiming defendant failed to find a higher-paying job within the one-year period prescribed by the November 2013 order and that her failure "to meaningfully seek adequate employment" violated the MSA.

On December 2, 2014, the trial judge conducted a conference with the parties. Defendant still had not secured full-time employment. The trial judge advised defendant that the job search lists she submitted were missing information required by the November 2013 order. He scheduled a plenary hearing "to address whether to impute income to the Defendant, whether the Defendant looked for a job in good faith and the possible modification of alimony and life insurance." The order directed defendant to "continue to diligently look for a job and provide the Plaintiff with proof of 5 job searches per week" and "provide documentation to the [Plaintiff] and the Court regarding how [she] is paying living expenses." Both parties were ordered to provide each other and the court their last tax return and last three paystubs.

The plenary hearing was conducted by a different judge in June 2015.

Plaintiff testified he received defendant's job search list

A-0558-15T1

every month, but because the list did not contain the positions she applied for, he was unable to verify her application efforts.

Plaintiff and defendant co-owned a pharmacy in Jamaica, where defendant had previously worked as a licensed pharmacist. Plaintiff testified that pharmacists in Jamaica earn approximately $50,000 to $60,000 and suggested plaintiff could split her time between living in Florida and working part-time as a pharmacist in Jamaica.

Defendant testified her license as a pharmacist in Jamaica expired after she left in 2002. She stated she does not have a pharmacy license in the United States and had applied for pharmaceutical sales jobs without success.

Defendant received an M.B.A. from Nova Southeastern University (Nova) in 2006, but remained unemployed until she began substitute teaching in January 2009, shortly after she obtained a green card and a Florida substitute teaching license. As a substitute teacher, she recalled making approximately $11,000 in 2009, $13,188 in 2013, and $17,447 in 2014, and estimated that she made "between $11,000 and $14,000" from 2009 through 2013. However, she only submitted evidence of her income for 2013, 2014, and 2015. Based on her pay stubs from March and April 2015, she was making $11.27 per hour.

Defendant testified she searched for substitute teaching jobs

A-0558-15T1

for approximately three hours every day, and was usually placed in short-term positions because long-term positions were hard to get. She did obtain a long-term substitute teaching job once, which she testified "pays the teacher's salary" of "[t]wenty something dollars" but without benefits. Defendant also testified she never applied for substitute teaching jobs outside of her county because the commuting costs were high and the job market was weak.

Defendant testified she obtained two "statement[s] of eligibility" from Florida in 2011 that permitted her to teach math to grades five through twelve before they expired in 2014. While eligible, she applied for "numerous" full-time teaching positions, received two callbacks, but was not hired because the employers told her they preferred certified teachers, which required additional schooling. She explained that she could not afford to renew her statements of eligibility and was discouraged because she "saw certified teachers having a hard time getting jobs."

Outside of applying for teaching jobs, defendant testified she went to three job fairs and applied for jobs at Nova and jobs advertised by Nova, but had no success. In addition, she used the website Career Builder to apply to jobs, as well as Monster.com, employers' websites, and newspapers ads. She also met with employment agencies, but never received a response from them. When

she attempted to apply in-person, employers either did not have any openings or directed her to apply online. She testified she searched for non-teaching jobs "anytime" and on the weekends, but did not say how much time she expended.

Defendant testified that, between March 2010 and November 2013, she had a few telephone interviews for mostly "sales, commission-type work." She recalled applying for a job that sent her to Lowe's on her second interview where she had to sell DirecTV subscriptions. She was able to attract one customer and was offered the job with a commission-only salary, but did not take it. She testified she had a few other interviews for similar sales jobs and "insurance type jobs," as well as an interview to be a resident supervisor for a homeless shelter for addicts. However, aside from sales jobs and commission-based jobs, she received no offers.

Following the November 2013 order, she testified she expanded her search to include "jobs that just needed . . . a high school diploma or GED," such as cashier and receptionist positions. However, between November 2013 and April 2015, defendant only received offers for commission-based jobs. She explained she did not accept these offers because she would have to commit full-time and give up her substitute teaching jobs, a move she considered "risky" because she did not believe she was very good at the sales

A-0558-15T1

jobs and would earn less money. Furthermore, defendant testified that medical issues caused by a serious car accident in 1992[1] prevented her from working in jobs that required lifting or standing for long periods of time, such as nursing aide, childcare, and pharmacy technician jobs.

When asked about expanding her job search geographically, defendant testified she searched for jobs "all over Florida" in the last year. She said she also applied for jobs outside Florida, but could not give specifics other than she "applied in North Carolina, not recently." She did state she would relocate from Florida if she could secure a job before moving.

Defendant testified that, between March 2011 and November 2013, she provided evidence of her job search efforts to plaintiff in the form of one list that stated the job title and company and, after the November 2013 order, she provided an additional list that identified who she spoke with.

The trial judge granted plaintiff's motion to terminate his obligation to pay alimony and maintain life insurance, effective June 30, 2016, and set forth her reasons in a fourteen-page written decision.

---

[1] Other than her own testimony, defendant did not provide any evidence regarding her health issues and their impact on her ability to work.

A-0558-15T1

The trial judge found both parties were "highly educated" and, represented by counsel, had agreed to the terms of the MSA, which memorialized their "understanding that Defendant would actively seek a higher-paying job to eventually put the parties' financials on equal footing." She concluded the MSA was a valid and enforceable contract between the parties in which "Plaintiff was to provide alimony to Defendant, while Defendant was to actively seek a better job." The judge found

> Defendant did not uphold her end of the parties' bargained-for-exchange. As shown by the evidence and testimony presented during the Plenary Hearing, over the course of five (5) years since the parties voluntarily entered into their Agreement, Plaintiff's $12,000.00 salary has only increased by approximately $5,000.00.

In her statement of reasons, the trial judge found defendant's testimony regarding her employment search "disingenuous" and "lack[ed] credibility," recounting that defendant "could not remember" from which employers she received callbacks, she was "vague and . . . stumbled over her own answers" when asked about her efforts to look for employment outside of her county of residence, and she was "unclear regarding the details of her increased job search."

The trial judge reviewed defendant's job search efforts in the years before the November 2013 order as well as her efforts

A-0558-15T1

following that order. She stated the "only list" defendant "provided with specific details of job applications" were all dated June 6, 2015,[2] just five days before the plenary hearing. Aside from that list, the trial judge found the job search lists defendant submitted were noncompliant with the MSA and court orders, as they were "incomplete," "vague and unspecific," and "precluded Plaintiff from verifying any of her job applications." Defendant did not provide any other evidence of her application submissions from the employers she applied to. The trial judge also found it "suspect" that defendant did not provide her tax returns from 2010 through 2013.[3]

The trial judge concluded defendant "did not make a good faith effort to obtain higher paying employment in violation of the [MSA]," that she "was not looking for a job with any sincere or honest effort," and her job search efforts were merely "a veiled attempt to make this Court and Plaintiff believe she was looking for a job to keep receiving alimony." The judge found defendant's need for alimony "was a self-imposed need created by her passive

---

[2] As defendant noted in her motion for reconsideration, the list actually spanned a time frame of February to June 2015.

[3] Defendant challenges this finding by the judge, stating she provided other evidence of her income. That argument does not refute the trial judge's observation that income tax returns were not provided.

job search of the past five (5) years" and she "purposefully under-informed Plaintiff."

The trial judge then considered whether plaintiff's alimony obligations should be modified or terminated. She found defendant to be "voluntarily underemployed" and imputed an income to her of $55,286.40, which defendant testified was "the salary of a full-time teacher in her area." Noting that the imputed income reflected an ability to earn a salary similar to plaintiff's, the trial judge terminated plaintiff's obligations to pay alimony and maintain life insurance for defendant's benefit, effective June 30, 2016.

On July 17, 2015, defendant moved for reconsideration of the June 29th order. She argued the trial judge incorrectly characterized her 2015 job search list by failing to acknowledge that the list spanned February to June 2015. She also contended the judge erred in imputing a full-time teacher's income because she was only a substitute teacher and not certified to teach full-time.

Following oral argument, the trial judge denied defendant's motion for reconsideration and set forth her reasons in a written opinion. The trial judge readily acknowledged and corrected the error she made regarding the dates contained in defendant's 2015 job search list. However, because the list spanned only five

12

months and was the "the only job search list" produced by defendant that complied with the information requirements of the MSA and court orders, the job search was insufficient to constitute a good faith effort by defendant in her overall employment search efforts. The trial judge also noted that, because the plenary hearing was originally scheduled for January 2015 to assess defendant's efforts in the year following the November 2013 order, defendant's post-January 2015 search efforts should not be considered. The trial judge also explained that the length of time of defendant's search was only one factor she considered; she also based her decision on other factors, such as her findings that defendant's testimony was not credible and her job search lists "created confusion specifically to avoid accountability." Further, the trial judge reaffirmed her finding that defendant was underemployed and that the income of a full-time teacher was properly imputed to her, noting defendant's testimony that she had worked an interim job at a full-time teacher's salary proved that she had the potential and capacity to earn a full-time teacher's income.

In her appeal, defendant argues the trial judge: abused her discretion in finding defendant acted in bad faith regarding her efforts to obtain higher-paying employment and ignored the directions included in prior court orders (Point II); admitted her

error in characterizing defendant's employment search (Point III); erred in imputing the salary of a full-time certified teacher to defendant (Point IV); erred in allowing respondent to make the unsubstantiated allegation he could not verify defendant's job search (Point V); made several errors regarding details of defendant's job search (Point VI), erred in allowing plaintiff to make the unsubstantiated allegation that defendant could earn $50,000 to $60,000 as a pharmacist in Jamaica (Point VII); erred in considering defendant's lack of job offers as evidence of her failure to comply with the prior order (Point VIII); erred in finding defendant lacked credibility (Point IX); and erred in finding defendant failed to provide tax returns for the period from 2010 to 2013 (Point X).

We are not persuaded by any of defendant's arguments. The argument raised in Point III lacks sufficient merit to warrant discussion and the arguments presented in Points V, VI, VII, VIII, IX and X require only limited discussion. R. 2:11-3(e)(1)(E).

## II.

Appellate review of a trial court's decision to modify an alimony obligation "must give due recognition to the wide discretion which our law rightly affords to the trial judges who deal with these matters." Reese v. Weis, 430 N.J. Super. 552, 571-72 (App. Div. 2013) (quoting Donnelly v. Donnelly, 405 N.J.

Super. 117, 127 (App. Div. 2009)). Discretion is particularly important in the adjudication of matrimonial matters "because the trial judge has 'a feel of the case' and is in the best position to 'make first-hand credibility judgments about the witnesses who appear on the stand.'" Elrom v. Elrom, 439 N.J. Super. 424, 433 (App. Div. 2015) (quoting N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008)).

Our "review of a trial court's findings of fact is limited." Reese, supra, 430 N.J. Super. at 567 (quoting Cesare v. Cesare, 154 N.J. 394, 413 (1998)). "The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Ibid. (quoting Cesare, supra, 154 N.J. at 411-12). Reversal is appropriate only when the factual findings prove to be "so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Elrom, supra, 439 N.J. Super. at 433 (quoting Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974)).

We are also "obliged to accord deference to the trial judge's credibility determinations." Reese, supra, 430 N.J. Super. at 567 (citing Cesare, supra, 154 N.J. at 412). When credibility is important, "the trial court's conclusions must be given great weight and must be accepted by the appellate court unless clearly

15

lacking in reasonable support." Id. at 568 (quoting N.J. Div. of Youth & Family Servs. v. F.M., 375 N.J. Super. 235, 259 (App. Div. 2005)).

We also "grant substantial deference to the trial judge's discretion on evidentiary rulings," Bd. of Educ. v. Zoning Bd. of Adjustment, 409 N.J. Super. 389, 430 (App. Div. 2009), and will not disturb a ruling "unless there is a clear abuse of discretion," Dinter v. Sears, Roebuck & Co., 252 N.J. Super. 84, 92 (App. Div. 1991).

However, "the trial judge's legal conclusions, and the application of those conclusions to the facts, are subject to our plenary review." Reese, supra, 430 N.J. Super. at 568 (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)). As always, questions of law are reviewed de novo. Ibid. (citing Dep't of Envtl. Prot. v. Kafil, 395 N.J. Super. 597, 601 (App. Div. 2007)).

Applying these principles to defendant's arguments, we conclude the arguments presented in Points V and VII challenge evidentiary rulings that did not constitute an abuse of discretion; the challenges to the trial judge's fact finding in Points VI, VIII and X fail because the judge's findings as a whole are supported by adequate, substantial, and credible evidence in the record; and the argument in Point IX challenging the judge's

16

credibility finding lacks merit because the judge's assessment is not clearly lacking in reasonable support. As a result, these arguments merit no further discussion.

III.

We turn to defendant's argument that the trial judge erred in finding she failed to make a good faith effort to find a higher-paying job in the years since the 2010 divorce.

Although defendant argues that plaintiff "presented no competent or compelling evidence to assert that [her] job search was lacking and amounted to bad faith," the trial judge's finding did not require "compelling evidence" for support, but only adequate, substantial and credible evidence to be accorded our deference.

The proofs defendant submitted to show her good faith efforts between November 2013 and January 2015 were not compliant with the MSA and the November 2013 order. The job search lists spanning from November 2013 to January 2015 contain significantly more entries than the job contacts lists of the same date range and only a few of the job search list entries can be found in the job contacts list. For example, according to the job search list, defendant applied to sixty jobs in November 2013, but only lists the information for seven job contacts that month on the job contacts list. Moreover, only one of the entries on the jobs

17

contacts list, "Karma Innovations Inc," appears on the job search list. Thus, the job search lists from November 2013 to January 2015 are deficient because they do not include the application date or employer contact information. Likewise, the job contacts lists from November 2013 to January 2015 are deficient because they do not contain five searches per week and do not include the positions she applied for.

There was, then, adequate support in the record for the finding that defendant failed to comply with the requirements for searching for a higher-paying job and documenting her efforts.

Nonetheless, defendant challenges the trial judge's finding, presenting the following arguments: She contends the judge erred in accepting plaintiff's assertion that defendant's job search proofs were unverifiable. She also argues the judge mischaracterized defendant's job search efforts by (1) stating defendant prioritized obtaining substitute teaching jobs; (2) making contradictory statements regarding defendant's testimony about her job search efforts outside of the county she resided in; and (3) stating defendant only searched for "teaching and customer services" jobs.

These criticisms of the trial judge's factfinding are unpersuasive. To the extent that the judge's statement of reasons failed to acknowledge details of defendant's job searches, these

oversights are inconsequential and do not undermine either the findings or the support that resulted in the conclusion that defendant failed to comply with the requirements established for her good faith job search.

IV.

In Point IV, defendant challenges the trial judge's decision to impute income to her that is the equivalent of a salary earned by a full-time certified teacher.

In determining a proper alimony award, imputation of income is warranted where a spouse "is, without just cause, voluntarily underemployed or unemployed." Schochet v. Schochet, 435 N.J. Super. 542, 549 (App. Div. 2014) (quoting Child Support Guidelines, Pressler & Verniero, Current N.J. Court Rules, comment 12 on Appendix IX-A to R. 5:6A at 2589 (2014)). A finding of "underemployment" means the spouse "is intentionally failing to earn that which he or she is capable of earning." Dorfman v. Dorfman, 315 N.J. Super. 511, 516 (App. Div. 1998).

The trial judge made the threshold finding that defendant was "voluntarily underemployed" as the basis for imputing income. Defendant argues that the decision to impute the level of income a full-time certified teacher earns is unsupported by competent evidence because she is not a certified teacher and cannot afford certification. She argues the temporary position she held as a

A-0558-15T1

"long-term substitute" making $26.58 per hour was not her "usual" or "former" income level, as evidenced by her pay stubs which showed she typically earned $11.27 per hour as a substitute teacher and testimony that higher-paid teaching jobs were difficult to obtain. In further support of her argument, defendant cited her testimony about the difficulty of getting a teaching job in Florida, her lack of contacts to obtain a tutoring job, and her inability to work at a preschool or daycare facilities and fast food restaurants due to her health issues.

Imputing the income of a spouse "is a discretionary matter not capable of precise or exact determination[,] but rather require[s] a trial judge to realistically appraise capacity to earn and job availability." Elrom, supra, 439 N.J. Super. at 434 (alterations in original) (quoting Gnall v. Gnall, 432 N.J. Super. 129, 158 (App. Div. 2013), rev'd on other grounds, 22 N.J. 414 (2015)). This court "will not reverse the decision absent a finding the judge's decision rested on an impermissible basis, considered irrelevant or inappropriate factors, failed to consider controlling legal principles or made findings inconsistent with or unsupported by competent evidence." Ibid. (citations and internal quotation marks omitted).

Trial judges have "'every right to appraise realistically [a spouse's] potential earning power' and examine 'potential earning

capacity' rather than actual income" when imputing income. <u>Id.</u> at 435 (citations omitted). If "a spouse is not earning to his or her true potential and capacity then an imputation of income based upon that potential is appropriate." <u>Stiffler v. Stiffler</u>, 304 <u>N.J. Super.</u> 96, 101 (Ch. Div. 1997).

Defendant has a master's degree in business administration, was a licensed pharmacist in Jamaica and has been able to obtain two "statement[s] of eligibility" from Florida that made her eligible to teach math to grades five through twelve full-time. Her employment history includes an interim teaching job that paid a "teacher's salary." This undisputed evidence, stripped to its essentials, supports the conclusion that she has the potential and capacity to earn substantially more than she has. Defendant's claim that she cannot afford to become certified or renew her statement of eligibility does not undercut that conclusion. <u>See</u> <u>Elrom</u>, <u>supra</u>, 439 <u>N.J. Super.</u> at 435 ("courts have always looked beyond . . . claims of limited resources and economic opportunity" in examining potential earning capacity.).

Although the trial judge's decision properly considered defendant's "work history, occupational qualifications, [and] educational background" in her income imputation, it made no mention of the "prevailing job opportunities in the region." Child Support Guidelines, Pressler & Verniero, <u>Current N.J. Court Rules</u>,

comment 12 on Appendix IX-A to R. 5:6A at www.gannlaw.com (2017). Defendant consistently testified she had a hard time obtaining full-time teaching jobs because employers preferred certified teachers and she "saw certified teachers having a hard time getting jobs." At the same time, however, she testified she never applied for teaching jobs outside of her county due to the high commuting costs and weak job market. In light of defendant's admission that she limited the scope of her search and the judge's appraisal of defendant's credibility, it was within the trial judge's discretion to disregard defendant's testimony regarding the job market for teachers in Florida.

Because the trial judge's decision to impute a full-time teacher's income to defendant is consistent with controlling legal principles and is adequately supported by competent evidence, it shall remain undisturbed.

V.

Defendant amended her notice of appeal to include an appeal from the denial of her motion for reconsideration. However, contrary to the requirements of Rule 2:6-2(a)(6), her appellate brief does not contain a separate point heading and argument regarding the denial of her motion for reconsideration. The failure to brief an argument may be deemed a waiver of the argument. Gormley v. Wood-El, 218 N.J. 72, 95 n.8 (2014).

Further, we "may refrain from considering cursory arguments . . . that are not properly submitted under proper point headings." Pressler & Verniero, <u>Current N.J. Court Rules</u>, comment 2 on <u>R.</u> 2:6-2 (2017) (citing <u>Solar Energy Indus. v. Christie</u>, 418 <u>N.J. Super.</u> 499, 508 (App. Div.), <u>certif. denied</u>, 207 <u>N.J.</u> 190 (2011).

The only argument we have gleaned from defendant's brief regarding the motion for reconsideration is included in Point III, in which she challenges the trial judge's factfinding and reviews exhibits that were submitted in support of the motion for reconsideration. These documents were not part of the record from the plenary hearing.

Pursuant to <u>Rule</u> 4:49-2, the purpose of a motion for reconsideration is to allow parties to bring to the trial court's attention "matters or controlling decisions which counsel believes the court has overlooked or as to which it has erred." It is not an opportunity to relitigate the matter by presenting the court with evidence that was not part of the record on which a decision has been made. <u>Capital Fin. Co. of Del. Valley, Inc. v. Asterbadi</u>, 398 <u>N.J. Super.</u> 299, 310 (App. Div.), <u>certif. denied</u>, 195 <u>N.J.</u> 521 (2008). Thus, denial is appropriate if the motion is based on unraised facts known to the movant prior to entry of judgment. <u>Del Vecchio v. Hemberger</u>, 388 <u>N.J. Super.</u> 179, 188-189 (App. Div. 2006).

Reconsideration is appropriate only in cases "that fall within that narrow corridor in which either 1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence." Asterbadi, supra, 398 N.J. Super. at 310 (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)). Moreover, "a litigant must initially demonstrate that the Court acted in an arbitrary, capricious, or unreasonable manner, before the Court should engage in the actual reconsideration process." D'Atria, supra, 242 N.J. Super. at 401.

To the extent that defendant has argued the court erred in denying her motion for reconsideration, her argument lacks merit. Defendant failed to make the requisite showing that the trial judge acted in an arbitrary, capricious or unreasonable manner. And, the documents submitted in support of the motion could not be relied upon to support a motion for reconsideration.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION