**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2353-15T2

DANIELLE DELORENZO-TAGLIA,
n/k/a DANIELLE FLORES,

    Plaintiff-Respondent,

v.

ERIC TAGLIA,

    Defendant-Appellant.

_____

        Submitted January 19, 2017 — Decided  April 28, 2017

        Before Judges Simonelli and Gooden Brown.

        On appeal from the Superior Court of New
        Jersey, Chancery Division, Family Part, Bergen
        County, Docket No. FM-02-0207-10.

        Porro Law Group LLC, attorneys for appellant
        (Janet L. Porro, Kristen M. Porro and Janet
        S. Del Gaizo, on the brief).

        Respondent has not filed a brief.

PER CURIAM

    In this post-judgment matrimonial matter, defendant Eric

Taglia appeals from the January 22, 2016 Family Part order, which

permitted plaintiff Danielle DeLorenzo-Taglia to relocate with the

parties' two children to Texas.  We affirm.

We derive the following facts from the record. The parties have two daughters, A.T. and M.T.,[1] who were ages thirteen and nine, respectively, when plaintiff sought to relocate. Pursuant to an April 8, 2010 consent order, which was incorporated into the parties' final judgment of divorce, the parties have joint legal custody of the children, with plaintiff as the parent of primary residence and defendant as the parent of alternate residence. The consent order also set defendant's parenting-time, as well as the parties' holiday, winter and spring recess, and summer vacation parenting time. The consent order contemplated plaintiff's relocation to Texas with the children, as it provided for defendant's parenting time in that event.

In June 2014, plaintiff sought the court's permission to relocate with the children to Texas. The court appointed Bergen Family Center (BFC) to conduct a diagnostic evaluation. At the time, defendant had parenting time on alternate weekends from Saturday at 10:00 a.m. to Sunday at 6:00 p.m., and Tuesdays from 3:00 p.m. to 7:15 p.m.

In his October 16, 2014 report, John Schmerler, Ph.D., from BFC, found that because plaintiff was the primary custodial parent, the factors in Baures v. Lewis, 167 N.J. 91 (2001) governed the

---

[1] We use initials to identify the children to protect their privacy.

evaluation. The doctor determined that plaintiff had a good faith reason for the move, as her new husband and his children resided in Texas and her husband's business was there. The doctor also found that plaintiff had proposed contact extensive enough to sustain the children's relationship with defendant after the move, and the move was not inimical to the children's best interests, since they would receive educational, health, and leisure opportunities in Texas comparable to what they were presently receiving. The doctor also noted that other than leaving their father, the major contraindication for the move was the presence of an extended family on both sides in New Jersey, but this factor was somewhat mitigated by the degree to which the children had been incorporated into the new husband's large extended family. The doctor recommended that plaintiff be permitted to move to Texas with the children because the factors supporting such a move outweighed the contraindications.

Defendant retained Ravinder Bhalla, M.D., who conducted a best interests evaluation and rendered a report on March 15, 2015. Dr. Bhalla did not consider the Baures criteria. Rather, he conducted a best interests analysis, and opined it was in the children's best interests to remain in New Jersey with plaintiff.

In his May 18, 2015 response to Dr. Bhalla's report, Dr. Schmerler agreed that under the best interests standard it was in

the children's best interests to remain in New Jersey; however, there were insufficient contraindications to prevent plaintiff from relocating with the children based on the Baures criteria. Drs. Schmerler's and Bhalla's reports were admitted into evidence, but not specifically mentioned by the court in its decision to permit plaintiff's relocation to Texas with the children.

Plaintiff testified that in Texas, the children would be sharing a room in a property that she and her husband were renting, and she would be working in a day care center. Justifying her relocation to Texas, plaintiff testified as follows:

> I truly just wish to provide a semi-normal life for my children. I know that their happiness matters and I believe that they will be happy in a settled situation with a normal two-parent home, whether that's a blended family or not. And they are very happy with the thought of having brothers and their step-father.
>
> They are close with their step-father. He taught [A.T.] how to tie her shoes and ride a bicycle. He has spent time teaching [M.T.] how to play the guitar. They do have a special bond. It's been seven years. I seek to have a normal life with my children and my husband and to move forward just as [defendant] has done. That is the reason why.

Defendant testified he had an extremely close relationship with the children and was actively involved in their extracurricular activities including dance, soccer, basketball, and girl scouts, as well as school events, concerts, back to school

4

nights, and projects, and he financially contributed to these expenses as necessary. He briefly mentioned having done other activities with the children such as nature walks, roller skating, shopping, and going down to the shore.

Defendant testified that in the past year, he had overnight parenting time approximately thirty times, and approximately sixty-five to seventy-five times in a single year in past years. Not counting overnights but simply seeing his children, he saw them 166 days in 2015; 181 days in 2014; 139 days in 2013; 129 days in 2012; and 142 days in 2010. Defendant also testified that in New Jersey, the children had the benefit of seeing members of their extended family, including cousins, grandparents, aunts, and uncles. Defendant said he could not relocate to Texas because his family business and licenses are in New Jersey. He testified as to the difficulty the parties had co-parenting their children, such as agreeing to parenting times or scheduling events or appointments during parenting time. His main concern with relocating the children to Texas was losing touch with them, by virtue of the distance and plaintiff "poisoning" the children.[2]

---

[2] Regarding jurisdictional concerns, the parties consented to New Jersey retaining jurisdiction in the event the court permitted relocation.

Finding that the plaintiff was the children's primary caretaker, the court concluded that <u>Baures</u> controlled, not <u>O'Connor v. O'Connor</u>, 349 <u>N.J. Super.</u> 381 (App. Div. 2002), which governs relocation in shared parenting situations. The court then analyzed the <u>Baures</u> factors, and made the following findings:

> (1) <u>The reasons given for the move</u>: [Plaintiff] desires to relocate to Texas with her new husband where his step-children live. Unlike in the past couple of years when this matter has come to the court before, we now have a secured living situation where a home has been rented with adequate room for all of the children. She has a job lined up. Based upon the testimony before this [c]ourt, that job is still available. So, she is remarried. They have a place to live. She has a job lined up. Her husband is employed.
>
> (2) <u>The reasons given for the opposition</u>: [Defendant is] a good guy. He works hard. He loves his daughters. He tries to make the best of a difficult situation where mother and father are not together anymore. He spends time with his daughters. He makes sure that he has a nice home for his daughters when they come over. He encourages and fosters his daughters' relationship with their mother despite the conflict between the parties. There's an extended family here, aunts, uncles, cousins. There are valid reasons given for the opposition.
>
> [T]here are significant, valid reasons given for the opposition.
>
> (3) <u>The past history of dealings between the parties insofar as it bears on the reasons advanced by both parties for supporting and opposing the move</u>: There is a history of at least alleged domestic violence between the

A-2353-15T2

parties notwithstanding the fact that any previous temporary restraining orders have been dismissed. There's a history of conflict between the parties, a lack of cooperation, agreement with respect to the children's health and welfare as in some ways respects the parents personal preferences because as I will continue to say and repeat despite the circumstances, they have two wonderful, intelligent, bright . . . children who appear to be thriving . . . . Mother had her reasons for leaving. Father has his valid reasons for them to stay.

(4) <u>Whether the child will receive educational, health and leisure opportunities at least equal to what is available here</u>: There is not much in the parties' submissions with respect to information that the [c]ourt can for inference take judicial notice of with regard to the demographics between New Jersey and the area that [plaintiff] intends on moving to in Texas, but I give credibility to . . . plaintiff's position in this case certainly with a stable home life. The most important factor is in the children's education which is the involvement with the parents and their encouragement. I am satisfied that the children will receive educational, health and leisure opportunity at least equal to what is available to them here.

(5) <u>Any special needs or talents of the child that require accommodation and whether such accommodation or its equivalent is available in the new location</u>: There is no particular special need that has been submitted by either of the parties. Thankfully, what we have here are two children that appear can absolutely thrive, achieve and accomplish in any situation.

(6) <u>Whether a visitation and communication schedule can be developed that will allow then noncustodial parent to maintain a full and</u>

continuous relationship with the child: I give weight and credibility to . . . plaintiff's position that there will be additional time afforded to [defendant] if the [c]ourt permits the move. I am concerned about [defendant]'s stated reluctance to travel to Texas if I allow the move because of a past, . . . history of alleged threats against him by [plaintiff]'s new husband. [Defendant] should be undeterred by that. If I allow the move nothing should deter him from spending time with his children. And if the [c]ourt allows the move, the [c]ourt will enter an order that requires [plaintiff] to bring the children to New Jersey, . . . the circumstances under which that will occur. And certainly if the move is allowed, that [defendant] is given financial consideration here, if he so chooses, when he wants to with reasonable notice should be allowed access to and contact with the children any time he wants.

(7) The likelihood that the custodial parent will continue to foster the child's relationship with the noncustodial parent if the move is allowed:[3]

(8) The effect of the move on extended family relationships here and in the new location: With respect to the [e]ffect of the move on extended family and relationships here, I have heard testimony from [M.T.] in particular with regard to relationships with [defendant] and his family. And of course I have extended family and I can see from the expressions on their faces, I can infer they're not just here as window dressing, they're here because they care about the children and they are supportive of [defendant].

(9) If the child is of age, his or her preference: We are dealing with a very bright, very vibrant 13-year-old young lady

---

[3] The judge made no separate findings on factor 7.

who is moving on with her teenage years and a 9-year-old in the fourth grade. I do give weight, I do give weight to their preferences. [M.T.] is somewhat more excited at the prospect of going to Texas. She is of course four years older than [A.T.], more mature. I have some added concern with [A.T.]. She's very attached to her father but at the same time, she also likes to visit with her step-brothers, had enjoyed going down to Texas. I think it's understandable that [M.T.] at her age might be more reluctant, might be more unsure, might be a little bit more nervous and certainly wonders about what it will be like being a substantial distance away from her father.

(10) <u>Whether the child is entering his or her senior year in high school at which point he or she should generally not be moved until graduation without his or her consent</u>: We don't have to deal with that right now. There's going to come a point though, and I want to remind [defendant], your children are 13 and 9 . . . . Any order of the [c]ourt here . . . [is] subject to modification after a period [of] time given changed circumstances and as the children grow older, their needs change, their preferences change.

(11) <u>Whether the noncustodial parent has the ability to relocate</u>: [Defendant] probably could if he wanted to, but that would simply devastate him both personally and financially and rip him apart from his extended family and the life that he has built here, the home that he has built for the children. Does he have the ability? I believe that he has the financial ability to do so if he wanted to.

This [c]ourt understands the reluctance. The [c]ourt understands what that would take. But with respect to a determination as to whether the non-custodial parent has the ability, I don't know if he has the ability

9

to make the move. His business is here. Is he going to close up the business and his livelihood to move to Texas, that would be in the children's best interest? Next thing you know[, plaintiff] is going to be on him to pay more money in child support or for failing to pay. I'm not going to do that to him. So I'm not going to make a finding that he has the ability to make the move. Certainly if he wanted to, well I encourage that.

(12) <u>Any other factor bearing on the child's interest</u>: The decision of the [c]ourt today is not reflective of any personal feelings about this case. The[re] are these enumerated factors. This case based upon the facts clearly falls within the standard under <u>Baures</u>, clearly, without question.

The court concluded that plaintiff established a good faith reason for the move under <u>Baures</u>, and the move would not be inimical to the children's best interests. The court entered an order on January 22, 2016, permitting plaintiff to relocate to Texas with the children, and setting defendant's parenting time schedule. This appeal followed.

Our review of a trial judge's factual findings, following a non-jury trial, is limited. <u>Elrom v. Elrom</u>, 439 <u>N.J. Super.</u> 424, 433 (App. Div. 2015). "Generally, 'findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence.'" <u>Ibid.</u> (quoting <u>Cesare v. Cesare</u>, 154 <u>N.J.</u> 394, 411-12 (1998)). In matrimonial matters, this "[d]eference is especially appropriate when the evidence is largely testimonial

and involves questions of credibility." Cesare, supra, 154 N.J. at 412 (citation omitted). "Reversal is warranted only when a mistake must have been made because the trial court's factual findings are 'so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice[.]'" Elrom, supra, 439 N.J. Super. at 433 (quoting Rova Farms Resort, Inc. v. Investors Ins. Co. of Am., 65 N.J. 474, 484 (1974)). "Consequently, when a reviewing court concludes there is satisfactory evidentiary support for the trial court's findings, 'its task is complete and it should not disturb the result[.]'" Ibid. (quoting Beck v. Beck, 86 N.J. 480, 496 (1981)). "Deference is appropriately accorded to factfinding; however, the trial judge's legal conclusions, and the application of those conclusions to the facts, are subject to our plenary review." Ibid. (quoting Reese v. Weis, 430 N.J. Super. 552, 568 (App. Div. 2013)). "Finally, legal conclusions are always reviewed de novo." Id. at 433-34 (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

Defendant first argues that plaintiff failed to show she had a good faith reason for relocating to Texas and that the children will nor suffer harm as a result of the move. We disagree.

"[T]he party seeking to move, who has had an opportunity to contemplate the issues, should initially produce evidence to

A-2353-15T2

establish prima facie that (1) there is a good faith reason for the move and (2) that the move will not be inimical to the child's interests."  Baures, supra, 167 N.J. at 118.  "[T]he burden of production rests initially on the movant to make out a prima facie showing on the good faith and harm to the child prongs[.]"  Morgan v. Morgan, 205 N.J. 50, 65 (2011) (citing ibid.).  Such a showing is established with evidence that, if unrebutted, would sustain a judgment in the proponent's favor.  As the Court has stated:

> The initial burden of the moving party is not a particularly onerous one.  It will be met, for example, by a custodial parent who shows that he is seeking to move closer to a large extended family that can help him raise his child; that the child will have educational, health and leisure opportunities at least equal to that which is available here, and that he has thought out a visitation schedule that will allow the child to maintain his or her relationship with the noncustodial parent.
>
> [Baures, supra, 167 N.J. at 118.]

"Should the moving party meet the burden of production, the noncustodial parent must then 'produce evidence opposing the move as either not in good faith or inimical to the child[ren]'s interest.'"  Morgan, supra, 205 N.J. at 66 (quoting Baures, supra, 167 N.J. at 119).

The court did not err in determining that plaintiff established a good faith reason to relocate with the children to Texas and that the move would not be inimical to the children's

interests. Baures applies in this case, and the court's factual findings and conclusion that plaintiff met her burden of proof are amply supported by the record. Cesare, supra, 154 N.J. at 412.

Defendant next argues that even if plaintiff had a good faith reason to relocate, the Baures factors fall in his favor. However, except to restate those factors, defendant makes no cognizable argument about any error by the court or factual contradiction. In many instances, he makes conclusory statements and does not cite to the record. Nevertheless, we are satisfied the court's Baures analysis was sound, and the Baures factors fell in plaintiff's favor.

Defendant next argues that the court should have applied the best interests of the child standard under O'Connor, and found that it is in the children's best interests to remain in New Jersey. This argument is without merit.

N.J.S.A. 9:2-2 provides as follows, in pertinent part:

> When the Superior Court has jurisdiction over the custody and maintenance of the minor children of parents divorced, separated or living separate, and such children are natives of this State, or have resided five years within its limits, they shall not be removed out of its jurisdiction against their own consent, if of suitable age to signify the same, nor while under that age without the consent of both parents, unless the court, upon cause shown, shall otherwise order.

Upon finding that this statute applies, the court must then determine the extant status of custody of the parties' children. Barblock v. Barblock, 383 N.J. Super. 114, 121 (App. Div.), certif. denied, 187 N.J. 81 (2006). If the evidence shows that one parent serves as the primary caretaker, then Baures governs the custodial parent's request to relocate the children. Ibid.

"If, conversely, the situation is a rare de facto 'shared parenting' arrangement, one in which each parent essentially performs an equal caretaking role, then the removal application must be analyzed under the stricter change-of-custody test of" O'Connor. Id. at 122. "The O'Connor standard hinges solely upon an analysis of the best interests of the children, regardless of the applicant's good faith motivation to relocate." Ibid. "In such instances, 'the party seeking the change in the custodial relationship must demonstrate that the best interests of the child[ren] would be better served by residential custody being vested primarily with the relocating parent.'" Ibid. (alteration in original) (citing O'Connor, supra, 349 N.J. Super. at 398; Chen v. Heller, 334 N.J. Super. 361, 380-82 (App. Div. 2000)).

As we have stated,

> [i]n determining the applicable standard to apply to plaintiff's removal application, the primary inquiry is whether the physical custodial relationship between plaintiff and defendant is one where plaintiff is the

14

"primary caretaker" and defendant is the "secondary caretaker," or, whether these parties truly share both legal and physical custody.

In discussing the criteria or factors to be used in determining that question, the Court stated:

> Although both [primary caretaker and secondary caretaker] roles create responsibility over children of divorce, the primary caretaker has the greater physical and emotional role. Because the role of "primary caretaker" can be filled by men or women, the concept has gained widespread acceptance in custody determinations.
>
> . . . .
>
> Although "time" is a critical factor to consider in determining the presence of a joint physical custodial relationship, we emphasize the importance of analyzing the division of time in the context of each party's responsibility for the custodial functions, responsibilities and duties normally reposed in the primary caretaker[.]
> [O'Connor, supra, 349 N.J. Super. at 398-400 (quoting Pascale v. Pascale, 140 N.J. 583, 598-99 (1995)).]

Here, plaintiff was the children's physical custodian and primary caretaker. Defendant's overnight parenting time every other weekend and his involvement in the children's schooling and activities did not establish a de facto shared parenting arrangement warranting application of O'Connor. Morgan, supra, 205 N.J. at 67.

Lastly, defendant argues that we should remand this matter for findings of fact and conclusions of law consistent with N.J.S.A. 9:2-4, and direct the trial court to apply the best interests of the child standard as it would in any change of custody case.[4] We decline to do so.

N.J.S.A. 9:2-4 applies to an initial custody determination where the court must consider certain factors in making a custody award. "A removal case is entirely different from an initial custody determination. When initial custody is decided, either by judicial ruling or by settlement, the ultimate judgment is squarely dependent on what is in the child's best interests." Baures, supra, 167 N.J. at 115 (citation omitted). In a removal case, the parents' interests take on importance, but the conflict in a removal case is not purely between the parents' needs and desires. Ibid. Rather, it is a conflict based on the extent to which the parents' needs and desires can be viewed as intertwined

---

[4] We decline to address defendant's additional arguments that plaintiff failed to show that she had re-married and had a place to live in Texas, and failed to produce competent, relevant evidence to prove where she and the children would actually live in Texas. We also decline to address defendant's arguments relating to plaintiff's testimony. Defendant did not raise these arguments or object to plaintiff's testimony before the trial court, and these issues do not go to the court's jurisdiction or concern a matter of public importance. R. 2:5-4; Zaman v. Felton, 219 N.J. 199, 226-27 (2014) (citation omitted). More importantly, defendant does not articulate any error by the court in assessing plaintiff's testimony or the evidence.

with the child's interests.  <u>Ibid.</u>  Differences between these two standards exist because the "pure best-interests standard" "would always, or nearly always, break in favor of keeping the child in proximity to two fit parents, thus chaining the custodial parent, who bears the laboring oar of child rearing, to New Jersey, while permitting the noncustodial parent free movement."  <u>Morgan</u>, <u>supra</u>, 205 <u>N.J.</u> at 65.

This is a removal case, not an initial or change in custody case.  Accordingly, <u>N.J.S.A.</u> 9:2-4 and the best interests of the child standard do not apply.  <u>Baures</u> applies, and plaintiff proved that she had a good faith reason for the move and the move would not be inimical to the children's best interests.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-2353-15T2