# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3490-18T2

E.A.O.,

    Plaintiff-Respondent,

v.

S.A.O.,

    Defendant-Appellant.[1]

_____

Argued March 10, 2020 – Decided April 28, 2020

Before Judges Messano and Ostrer.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Burlington County, Docket No. FV-03-1367-19.

Ted M. Rosenberg argued the cause for appellant.

Abigail Cook, admitted pursuant to Rule 1:21-3(b), argued the cause for respondent (Rutgers Domestic Violence Clinic, Rutgers Law, attorneys; Denise Marie Higgins, Staff Attorney, of counsel; Hannah Lee, admitted pursuant to Rule 1:21-3(b), on the brief).

---

[1] We use initials to maintain the confidentiality of the parties. R. 1:38-3(d)(9).

PER CURIAM

Following a two-day hearing, the Family Part judge entered a final restraining order (FRO) in favor of plaintiff against defendant, her husband, pursuant to the Prevention of Domestic Violence Act, N.J.S.A. 2C:25-17 to -35 (the PDVA). The judge concluded defendant committed harassment, N.J.S.A. 2C:33-4, a predicate act of domestic violence, and that issuance of an FRO was necessary for plaintiff's protection. See Silver v. Silver, 387 N.J. Super. 112, 126 (App. Div. 2006) ("The second inquiry, upon a finding of the commission of a predicate act of domestic violence, is whether the court should enter a restraining order that provides protection for the victim.").

Defendant appeals, arguing the judge failed to specifically find or conclude that defendant's conduct was accompanied by an "intent to alarm or seriously annoy" plaintiff, an essential element of harassment under N.J.S.A. 2C:33-4(c). Defendant also argues the judge mistakenly exercised his discretion in crediting plaintiff's testimony over defendant's; and in excluding from evidence for impeachment purposes an audio recording of a conversation between plaintiff and defendant. Lastly, defendant contends the judge failed to properly analyze the evidence under the second Silver prong. Defendant urges us to reverse and remand the matter for a "rehearing" before a different judge.

A-3490-18T2

We have considered these arguments in light of the record and applicable legal standards. We conclude the judge failed to make adequate findings of fact and conclusions of law. We reverse and remand for a new hearing before a different judge.

I.

On February 19, 2019, both parties filed domestic violence complaints.[2] Defendant filed first by minutes, alleging plaintiff harassed him. He described several events that allegedly occurred during the month of January, as well as plaintiff's February 15 departure from the couple's home with their three children without prior notice.[3]

Plaintiff's complaint also alleged harassment and centered primarily on events of February 11 through February 15. Additionally, plaintiff provided a detailed and voluminous statement about events that allegedly demonstrated a prior history of domestic violence during the marriage. Significantly, plaintiff alleged that defendant had sexually assaulted her on several occasions.

---

[2] For reasons unexplained by the record, temporary restraining orders (TROs) were not entered until March 12, 2019, by the same judge who was the trial judge.

[3] Defendant also described various events over the years that demonstrated a "prior history of domestic violence." We need not discuss them here because they are unimportant to our decision.

A-3490-18T2

Defendant testified first at trial, described the allegations made in his complaint, and introduced text messages between himself and plaintiff that, he claimed, demonstrated his caring concern for his wife. Defendant denied that he ever sexually assaulted plaintiff and, instead, claimed that plaintiff was purposely denying him sexual relations. Defendant said that early in the morning of February 14, he drove plaintiff's car to work because his car was being repaired. Plaintiff texted him, demanding he return her car, and he drove home, albeit sometime later. When he arrived home, plaintiff was angry and got into the car to leave with the couple's infant son. Defendant had no idea where plaintiff was going, and so he "tapped" on the window and asked. Plaintiff refused to answer and drove away. Defendant claimed that the following day, he went to work in the morning and returned home to find plaintiff and the three children gone without explanation.

Plaintiff's testimony described in general terms defendant's controlling behavior leading up to her February 15 departure with the children. She said that on February 13, having decided to leave and go to a shelter with the children, she went to her neighbor's house to see if the neighbor would care for plaintiff's cat. However, defendant followed her to the neighbor's home, and

plaintiff was unable to make the request. Plaintiff claimed defendant always wanted to know where she was and what she was doing.

Plaintiff had been sleeping separately from defendant in her daughter's room. When she awoke on the morning of February 14, her car was gone. She texted defendant because she needed the car to run an errand, but defendant did not return for a couple hours. When he did, plaintiff exited the house with her infant son and entered the car, but defendant tried to block her from leaving and demanded to know where she was going. According to plaintiff, defendant was banging on the car window and screaming at her. She was frightened.

Plaintiff eventually ran her errand — a trip to a mechanic — but was unable to use her credit card to pay the bill. She texted defendant for information about the account, but he refused to provide her any. Instead, defendant texted her back sometime later, saying that he had resolved the problem. The mechanic confirmed receipt of payment. Plaintiff testified that she had no credit cards in her own name and was not on a joint bank account with defendant. She claimed that defendant insisted on approving all her purchases. On February 15, after defendant left for work, plaintiff gathered the parties' three children and left for the shelter, which is where they still resided at the time of trial in mid-March 2019.

Plaintiff recounted in detail several sexual assaults defendant allegedly committed. She described how on more than one occasion she awoke from sleep to find defendant engaged in intercourse with her. During cross-examination, plaintiff testified that she had no sexual relations with defendant during the prior year. Defense counsel wished to confront her with an audio recording defendant surreptitiously made with his phone, in which, counsel proffered, plaintiff admitted or implied that she had sex with defendant in January. Because the recording was twenty-five minutes long, the judge took a break and told counsel to "listen to it[,]" and then he would consider argument.

The record reflects that proceedings resumed approximately thirteen minutes later, before both attorneys had a chance to listen to the entire recording, and, according to defense counsel, before they "g[o]t to the part." Refusing to listen to "[twenty-five] minutes worth of stuff," the judge asked defense counsel for a proffer. Essentially, counsel claimed that during the conversation defendant referenced a certain night in January, and plaintiff said, "Don't even bring that up. Everyone has needs."

The judge said he understood and instructed defense counsel to continue his cross-examination, offering the following explanation:

Judge: . . . And just so the record's clear, . . . the allegations of whatever happened or didn't happen in January are not part of the predicate act.

Defense counsel: I understand . . . .

Judge: . . . [I]t just goes to the weight of the history. So that's why I don't want to spend a lot of time on that particular issue.

Defense counsel: Okay. Thank you, Judge.

Judge: But you made your point.

The judge rendered an oral decision following testimony. He found that defendant's allegations were evidence of "marital contretemps rather than a criminal harassment." See, e.g., Corrente v. Corrente, 281 N.J. Super. 243, 250 (App. Div. 1995) (noting the PDVA "was intended to address matters of consequence, not ordinary domestic contretemps"). He opined that the parties' unhappy relationship signaled the likelihood of a divorce complaint being soon filed. The judge concluded defendant failed to meet "his burden as to showing a predicate act[,]" and dismissed defendant's complaint.[4]

Turning to plaintiff's allegations, the judge focused on the events in February and found no "particular incident" committed by defendant "was criminal harassment." However, the judge found defendant engaged in a "course

---

[4] Defendant has not appealed the dismissal of his complaint.

of conduct . . . controlling of both [plaintiff's] whereabouts[,] as well as the finances." Citing the frequency of defendant's text messaging of plaintiff, which the judge described as "mostly innocuous," he nevertheless expressed concern "that [plaintiff] presents as a victim of domestic violence under the cycle." As to plaintiff's allegations of sexual assault, the judge specifically eschewed making any findings, stating, "It's not part of the predicate act, so it's not necessary for me to do so. . . . I don't find anything happened one way or the other as to those allegations."

Citing plaintiff's credible testimony "as to what she's endured during the course of the marriage[,]" the judge found "she does present as a domestic violence victim who's been controlled by the defendant." As to the events of February 14, "where [defendant] essentially tried to stop [plaintiff] from leaving," the judge found this was "further evidence of the fact . . . that he was trying to control and keep her within the relationship." The judge found plaintiff "met her burden as to showing that a criminal harassment has occurred." After making a cursory statement regarding the second Silver prong, the judge entered the FRO, and this appeal followed.

"The scope of appellate review of a trial court's fact-finding function is limited. The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 411–12 (1998) (citing Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974)). "We defer to the credibility determinations made by the trial court because the trial judge 'hears the case, sees and observes the witnesses, and hears them testify,' affording it 'a better perspective than a reviewing court in evaluating the veracity of a witness.'" Gnall v. Gnall, 222 N.J. 414, 428 (2015) (quoting Cesare, 154 N.J. at 412). Moreover, "[b]ecause of the family courts' special jurisdiction and expertise in family matters, appellate courts should accord deference to family court factfinding." Cesare, 154 N.J. at 413. However, we do not defer to the judge's legal conclusions if "based upon a misunderstanding of . . . applicable legal principles." T.M.S. v. W.C.P., 450 N.J. Super. 499, 502 (App. Div. 2017) (quoting N.T.B. v. D.D.B., 442 N.J. Super. 205, 215 (App. Div. 2015)).

A person is guilty of harassment if,

> with purpose to harass another, he:
>
> a. Makes, or causes to be made, a communication or communications anonymously or at extremely

inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm;

b. Subjects another to striking, kicking, shoving, or other offensive touching, or threatens to do so; or

c. Engages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.

[N.J.S.A. 2C:33-4.]

Although the judge did not specify what subsection of the "statue" applied, we conclude his reference to defendant's "course of conduct" means the judge considered the testimony under subsection (c).

Section (c) of N.J.S.A. 2C:33-4 "proscribes a course of alarming conduct or repeated acts with a purpose to alarm or seriously annoy an intended victim." State v. Hoffman, 149 N.J. 564, 580 (1997); see also, Peranio v. Peranio, 280 N.J. Super. 47, 55 (App. Div. 1995) ("Integral to a finding of harassment under N.J.S.A. 2C:33-4(c) is the establishment of the purpose to harass, along with a course of alarming conduct or repeated acts intended to alarm or seriously annoy another[.]" (citation omitted)) "'A finding of a purpose to harass may be inferred from the evidence presented' and from common sense and experience." H.E.S. v. J.C.S., 175 N.J. 309, 327 (2003) (quoting Hoffman, 149 N.J. at 577).

A-3490-18T2

"A history of domestic violence may serve to give content to otherwise ambiguous behavior and support entry of a restraining order." J.D. v. M.D.F., 207 N.J. 458, 483 (2011). Nevertheless, the Court has cautioned trial judges when considering allegations of harassment under subsection (c).

> Although a purpose to harass can be inferred from a history between the parties, that finding must be supported by some evidence that the actor's conscious object was to alarm or annoy; mere awareness that someone might be alarmed or annoyed is insufficient. The victim's subjective reaction alone will not suffice; there must be evidence of the improper purpose. Moreover, when evaluating whether an individual acted with the requisite purpose, our courts must be especially vigilant in cases involving, as do many domestic violence disputes, the interactions of a couple in the midst of a breakup of a relationship.
>
> [Id. at 487 (emphasis added) (citations omitted).]

Here, the judge recognized ongoing marital disharmony in this family culminating in the events of February 15, 2019, and found that "no . . . particular incident" amounted to harassment. He never specifically determined which acts or incidents comprised defendant's "course of conduct" in violation of subsection (c). Instead, the judge expressed a general feeling that defendant was exerting control over plaintiff, who the judge concluded was trapped in a cycle of domestic violence. We do not minimize the judge's concerns nor necessarily question his assessment. However, a judge is required to make specific findings

11

of fact and state his or her conclusions of law. R. 1:7-4(a); Strahan v. Strahan, 402 N.J. Super. 298, 310 (App. Div. 2008).

Most importantly, the judge never found that defendant acted with the conscious object to alarm or seriously annoy plaintiff. Perhaps we could conclude this was implicit had the judge made explicit findings regarding plaintiff's allegations of prior domestic violence, most notably and seriously, her assertions that defendant repeatedly sexually assaulted her. However, the judge elected not to make any findings at all about those allegations.

Although our standard of review is generally limited, where inadequate factual findings are made or where issues are not addressed, we are constrained to vacate the FRO and remand for further proceedings. Elrom v. Elrom, 439 N.J. Super. 424, 443 (App. Div. 2015). The TRO shall remain in place until the remand hearing is completed. Because the judge made credibility findings, we order that a different judge conduct the rehearing. See, e.g., R.L. v. Voytac, 199 N.J. 285, 306 (2009) ("Because the trial court previously made credibility findings, we deem it appropriate that the matter be assigned to a different trial court.").

Lastly, we do not know what evidence may be adduced on remand, and, therefore, we cannot say with assurance that the audio recording defendant

proffered at trial should be admitted into evidence at the rehearing. We leave that decision to the sound discretion of the remand judge.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

13

A-3490-18T2