# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3249-19

M.D.,[1]

    Plaintiff-Respondent,

v.

C.W.,

    Defendant-Appellant.

_____

        Submitted February 24, 2021 – Decided April 5, 2021

        Before Judges Rose and Firko.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Middlesex County, Docket No. FV-12-1472-20.

        The DeTommaso Law Group, LLC, attorneys for appellant (Michael J. DeTommaso, on the briefs).

        Law Offices of Jonathan F. Marshall, attorneys for respondent (Brett M. Rosen, on the brief).

---

[1] We use initials for the parties to protect plaintiff's confidentiality. R. 1:38-3(d)(10).

PER CURIAM

Defendant C.W.[2] appeals from a March 4, 2020 final restraining order (FRO) issued in favor of her former boyfriend, plaintiff M.D., pursuant to the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35.  We affirm.

I.

We glean the following facts from the testimony elicited at the FRO hearing.  Plaintiff and defendant were in a dating relationship and were household members living in an apartment until January 26, 2020, when plaintiff moved out to live with his parents.  Defendant testified that plaintiff ended their relationship on December 30, 2019, but the parties intended to reside together until the expiration of their joint lease in March 2020.

On January 26, 2020, while the parties were driving on the Turnpike, defendant testified that while plaintiff was driving, she informed him she was going on a date that night.  Plaintiff testified he became upset because he thought they were moving on too quickly and should wait until they both vacated the

---

[2] We refer to the parties as their names appear in the caption on appeal.  The Family Part judge referred to defendant as "plaintiff" and plaintiff as "defendant" prior to rendering his opinion consistent with the order in which the complaints under the PDVA were filed.

A-3249-19

apartment to pursue other relationships. Defendant claimed plaintiff began to drive erratically, and plaintiff denied this.

After returning to their apartment, defendant held up a bottle, threatening to "punch" and "kill" plaintiff. He testified that defendant became very violent and angry, proceeding to get in his face. While waiving three fingers in plaintiff's face, defendant told him that he "doesn't get to tell her what to do." Plaintiff stood up and tried to calm defendant down, but she slapped him across the face with such force that his eyeglasses flew off. She then took a letter opener, placed it against plaintiff's chest, and told him, "I'm going to kill you."

After putting down the letter opener, defendant began "swinging" at plaintiff. Ultimately, both parties fell to the ground; plaintiff held defendant's wrists to stop her from hitting him. Defendant struck plaintiff "multiple times." When defendant got up, she grabbed the collar of plaintiff's shirt and almost "ripped all the way through" as he tried to run into the bedroom and close the door for his safety. Defendant grabbed plaintiff's guitar and attempted to break it while he held it. He dropped the guitar and while in the bedroom, defendant pushed or kicked the door open, and then kicked plaintiff from behind as he headed towards the closet.

A-3249-19

Plaintiff told defendant to "get away" from him, and he pushed her onto the bed. Defendant testified plaintiff told her to give her date a "blow job," get an STD, and die. From the edge of the bed, defendant kicked plaintiff in his chest, arms, and legs. She called him a "pussy" and said he had a "small dick." Defendant called the police claiming plaintiff attacked her. Plaintiff testified he did not want to apply for a temporary restraining order (TRO) that day and declined to file criminal charges against defendant because he "didn't want her to get in trouble," and "didn't want anything bad to happen to her." Because he was in a state of "panic," plaintiff did not tell the police about the letter opener incident. After observing plaintiff covered in red marks on his torso and chest, and a dark, red burn on his neck, the police arrested defendant on January 26, 2020.

After the January 26, 2020 incident, plaintiff sent defendant text messages on January 29 and 30, 2020, inquiring as to how she was feeling and stating they "need to talk." Plaintiff testified the parties had "to initiate conversation" about the expiration of their apartment lease and moving out. Defendant did not respond to plaintiff's text messages. Prior to the entry of the February 4, 2020 TRO, plaintiff returned to the apartment during his lunch hour from work on more than one occasion to retrieve his personal possessions when defendant was

4

not there. He testified that if defendant was there or showed up, he "probably" would have called the police.

On February 4, 2020, defendant obtained a TRO against plaintiff and several weeks later, plaintiff obtained a cross-TRO against defendant on February 25, 2020. He amended his cross-TRO two days later and added additional instances of prior domestic violence between the parties.

At trial, plaintiff testified and gave his account of the January 26, 2020 incident. In terms of the prior history of domestic violence between the parties, plaintiff testified that in July 2019, defendant repeatedly punched him after she had been drinking. He also testified about an incident that occurred in November 2019 when defendant threw a glass at him, which he disclosed to his psychiatrist. According to plaintiff, he was treating with a psychiatrist for anxiety and depression.

Plaintiff sought to introduce his psychiatrist's notes from his November 2, 2019 session into evidence under Rule 803(c)(3), "Then-Existing Mental, Emotional, or Physical Condition," Rule 803(c)(4), "Statements for Purposes of Medical Diagnosis or Treatment," and Rule 803(c)(6), "Records of a Regularly Conducted Activity." The psychiatrist did not testify at trial and no custodian of records appeared to authenticate the doctor's notes as being kept in the

5

ordinary course of business. The judge inquired of plaintiff's counsel whether an adjournment was requested to have someone appear from the doctor's office to testify. Plaintiff's counsel agreed to do that, but defendant's counsel and defendant did not want an adjournment. The judge admitted the psychiatrist's record into evidence. Plaintiff testified that his psychiatrist noted in his record that defendant was physically aggressive towards him that day and on prior occasions.

In December 2019, defendant became angry at plaintiff, and he testified she slammed a keyboard against the wall. Plaintiff did not call the police following these incidents because he did not want anything to happen to her, and he feared retaliation because she is a "violent person." The record also shows that defendant weighed fifty pounds more than plaintiff.

Officer Michael Kelly testified upon arriving at the scene, that plaintiff was "shirtless," "very visibly distraught," and "covered in red marks along his torso and chest." Officer Kelly also stated plaintiff had a "dark red burn along his neck" and "a couple of scratch marks along the upper chest." According to Officer Kelly, defendant had "no sign of injury on her."

Following the close of evidence, the Family Part judge rendered a thorough oral decision. The judge summarized the evidence presented regarding

6

domestic violence and analyzed the testimony pursuant to the framework established under Silver v. Silver, 387 N.J. Super. 112, 126 (App. Div. 2006). Based on this assessment, the judge found defendant did not satisfy her burden of proof by a preponderance of the credible evidence as to the predicate acts of harassment, N.J.S.A. 2C:33-4(b); assault, N.J.S.A. 2C:12-1(1); or terroristic threats, N.J.S.A. 2C:12-3(a). Accordingly, the judge dismissed defendant's TRO and domestic violence complaint against plaintiff.

As to plaintiff's complaint, the judge found plaintiff was "far more credible as a witness" than defendant, and Officer Kelly to be "extremely credible." The judge determined that plaintiff satisfied his burden of proof as to the predicate acts of harassment, assault, and terroristic threats, satisfying the first Silver prong. After addressing the prior history of domestic violence between the parties in conjunction with the predicate acts proven by plaintiff, the judge analyzed the second Silver prong. The judge concluded an immediate danger existed in light of the "severity of the assault" by defendant against plaintiff on January 26, 2020, and the July 2019 incident involving alcohol. As such, plaintiff required an FRO to protect him "from further abuse at the hand" of defendant. This appeal followed.

On appeal, defendant argues:

(1) the judge abused his discretion in concluding plaintiff satisfied his burden under the second prong of <u>Silver</u> because the evidence and testimony did not support a finding he was in immediate danger of her; and

(2) the judge abused his discretion in concluding plaintiff had satisfied his burden under the second prong of <u>Silver</u> because the evidence relied upon to establish a prior history of domestic violence constituted inadmissible hearsay.

Defendant does not appeal the dismissal of her TRO and domestic violence complaint.

## II.

Our review of the Family Part judge's decision to enter a FRO in a domestic violence matter is limited. <u>Peterson v. Peterson</u>, 374 N.J. Super. 116, 121 (App. Div. 2005). "A reviewing court is bound by the trial court's findings 'when supported by adequate, substantial, credible evidence.'" <u>Ibid.</u> (quoting <u>Cesare v. Cesare</u>, 154 N.J. 394, 412 (1998)). "This deferential standard is even more appropriate 'when the evidence is largely testimonial and involves questions of credibility.'" <u>L.M.F. v. J.A.F., Jr.</u>, 421 N.J. Super. 523, 533 (App. Div. 2011) (quoting <u>In re Return of Weapons to J.W.D.</u>, 149 N.J. 108, 117 (1997)). "Reversal is warranted only when a mistake must have been made because the trial court's factual findings are 'so manifestly unsupported by or

A-3249-19

inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice[.]'" Elrom v. Elrom, 439 N.J. Super. 424, 433 (App. Div. 2015) (quoting Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974)). However, we review de novo "the trial judge's legal conclusions, and the application of those conclusions to the facts[.]" Ibid. (quoting Reese v. Weis, 430 N.J. Super. 552, 568 (App. Div. 2013)).

In adjudicating a domestic violence case, the trial judge has a "two-fold" task. Silver, 387 N.J. Super. 125. The judge must first determine whether the plaintiff has proven, by a preponderance of the evidence, that the defendant committed one of the predicate acts referenced in N.J.S.A. 2C:25-19(a) as conduct constituting domestic violence. Id. at 125-26. The judge must construe any such acts in light of the parties' history to better "understand the totality of the circumstances of the relationship and to fully evaluate the reasonableness of the victim's continued fear of the perpetrator." Kanaszka v. Kunen, 313 N.J. Super. 600, 607 (App. Div. 1998); see N.J.S.A. 2C:25-29(a)(1).

A finding of harassment requires proof that the defendant acted "with purpose to harass." N.J.S.A. 2C:33-4; see Silver, 387 N.J. Super. at 124. Although a purpose to harass may, in some cases, be "inferred from the evidence," and may be informed by "[c]ommon sense and experience[,]" a

finding by the court that the defendant acted with a purpose or intent to harass another is integral to a determination of harassment.  State v. Hoffman, 149 N.J. 564, 577 (1997).

We note that purposeful conduct "is the highest form of mens rea contained in our penal code, and the most difficult to establish."  State v. Duncan, 376 N.J. Super. 253, 262 (App. Div. 2005).  Its establishment requires proof, in a case such as this, that it was the actor's "conscious object to engage in conduct of that nature or to cause [the intended] result."  N.J.S.A. 2C:2-2(b)(1).  A plaintiff's assertion that the conduct is harassing is not sufficient.  J.D. v. M.D.F., 207 N.J. 458, 484 (2011).  Further, a "victim's subjective reaction alone will not suffice; there must be evidence of the improper purpose."  Id. at 487.

When deciding the issues of intent and effect, we are mindful of the fact that

> harassment is the predicate offense that presents the greatest challenges to our courts as they strive to apply the underlying criminal statute that defines the offense to the realm of domestic discord.  Drawing the line between acts that constitute harassment for purposes of issuing a domestic violence restraining order and those that fall instead into the category of "ordinary domestic contretemps" presents our courts with a weighty responsibility and confounds our ability to fix clear rules of application.

[Id. at 475 (citation omitted).]

"[T]he decision about whether a particular series of events rises to the level of harassment or not is fact-sensitive." Id. at 484.

As to harassment, the judge reasoned that plaintiff proved the elements under N.J.S.A. 2C:33-4(b) because there was "striking, kicking and shoving" by defendant, specifically slapping plaintiff across the face, causing a scratch near his right temple. Calling plaintiff a "pussy" and saying he has a "small dick" were found to be domestic contretemps by the judge and did not constitute a separate act of harassment.

Based on his assessment, the judge also found that a simple assault occurred, contrary to N.J.S.A. 2C:12-1(a)(1), as a result of defendant's punches to plaintiff's "arms, head and torso," and kicking "him in the chest while she was on the bed." In pertinent part, the assault statute provides a person is guilty of assault if he or she "attempts to cause or purposely, knowingly or recklessly causes bodily injury to another." N.J.S.A. 2C:12-1(a)(1). The judge determined defendant's actions were "done purposely and knowingly under the assault statute."

The judge also credited plaintiff's testimony over that of defendant before concluding she committed the predicate act of terroristic threats. A person commits the act of terroristic threats if a person

> threatens to commit any crime of violence with the purpose . . . to put [that other person] in imminent fear of death under circumstances reasonably causing the victim to believe the immediacy of the threat and the likelihood that it will be carried out.
>
> [N.J.S.A. 2C:12-3.]

Proof of terroristic threats must be assessed by an objective standard. State v. Smith, 262 N.J. Super. 487, 515 (App. Div. 1993). "The pertinent requirements are whether: (1) the defendant in fact threatened the plaintiff; (2) the defendant intended to so threaten the plaintiff; and (3) a reasonable person would have believed the threat." Cesare, 154 N.J. at 402.

Here, in the face of the "severity of the altercation," the judge determined that defendant telling plaintiff she was going to kill him was said "with the purpose to terrorize him," as defined in N.J.S.A. 2C:12-3(a). We are satisfied defendant's actions met these requirements and qualified as terroristic threats.[3]

---

[3] Plaintiff also pled criminal mischief as a predicate act in his complaint, but the judge did not address criminal mischief in his opinion. Since plaintiff needed only to prove that one predicate act set forth in N.J.S.A. 2C:25-19(a) occurred, we nonetheless affirm the FRO. Silver, 387 N.J. Super. at 125; Cesare, 154 N.J. at 402.

A-3249-19

Given our deferential standard of review, we discern no basis to disturb the judge's findings as to harassment, assault, and terroristic threats.

If a predicate offense is proven, the judge must then assess "whether a restraining order is necessary, upon an evaluation of the [factors] set forth in N.J.S.A. 2C:25-29(a)(1) to (6), to protect the victim from an immediate danger or to prevent further abuse." J.D., 207 N.J. at 475-76 (quoting Silver, 387 N.J. Super. at 127). The factors which the court should consider include, but are not limited to:

> (1) The previous history of domestic violence between the plaintiff and defendant, including threats, harassment and physical abuse;
>
> (2) The existence of immediate danger to person or property;
>
> (3) The financial circumstances of the plaintiff and defendant;
>
> (4) The best interests of the victim and any child;
>
> (5) In determining custody and parenting time the protection of the victim's safety; and
>
> (6) The existence of a verifiable order of protection from another jurisdiction.
>
> [N.J.S.A. 2C:25-29(a).]

Here, the judge properly considered and permitted plaintiff's testimony on prior acts of domestic violence and addressed the six statutory factors set forth in N.J.S.A. 2C:25-29(a). Based upon the substantial credible evidence in the record, the judge found "the existence of immediate danger" posed by defendant to plaintiff. Defendant's conduct was not an isolated incident based on plaintiff's credible testimony that defendant assaulted him in the recent past. We discern no abuse of discretion in the issuance of the FRO for plaintiff's protection.

Defendant's argument that the judge abused his discretion in concluding plaintiff satisfied his burden under the second prong of Silver because the evidence relied upon—the psychiatrist's record—constituted inadmissible hearsay is rejected. In his opinion, the judge highlighted that he "had not considered anything" in the psychiatrist's record, "other than the recitation of [plaintiff's] own statements to his mental health professional" relative to the November 2019 incident. Moreover, defendant and her counsel declined the opportunity for an adjournment to have the psychiatrist or the custodian of records testify. Therefore, we discern no violation of any evidence rule and there was no resulting prejudice to defendant. The judge's determination that an FRO was necessary to protect plaintiff was well-founded.

In light of our decision, we need not address plaintiff's argument that defendant's appeal was filed beyond the forty-five-day time limit set forth in Rule 2:4-1(a).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3249-19