# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0359-20

L.J.,[1]

    Plaintiff-Respondent,

v.

K.S.,

    Defendant-Appellant.

_____

        Submitted May 12, 2021 – Decided May 27, 2021

        Before Judges Fuentes and Firko.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Somerset County, Docket No. FV-18-0229-21.

        Karen Kirchoff Saminski, Esq., LLC, attorneys for appellant (Kate Monagle, on the brief).

        Respondent has not filed a brief.

---

[1] We use initials for the parties to protect plaintiff's confidentiality. R. 1:38-3(d)(10).

PER CURIAM

Defendant K.S. appeals from an August 27, 2020 final restraining order (FRO) issued in favor of his former girlfriend, plaintiff L.J., pursuant to the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35. We affirm.

I.

We derive the following facts from the record and testimony elicited at the FRO hearing, which was conducted by Zoom. From the onset, we are mindful of the challenges that trial courts and staff have experienced using platforms such as Zoom necessitated by the COVID-19 pandemic. As noted in our recent decision, D.M.R. v. M.K.G., ___ N.J. Super. ___ (App. Div. 2021) (slip op. at 2):

> Everyone may not have the same access to technology. These proceedings often involve unrepresented litigants unfamiliar with court proceedings, which presents its own challenges now amplified by the virtual proceeding. Moreover, judges do not have the same mechanisms to control the proceeding that they would have in a live courtroom.

We address this appeal through that lens.

The parties were in a dating relationship until plaintiff filed a complaint under the PDVA seeking a temporary restraining order (TRO). Their son was

born in January 2015. The parties and their child were living together when the domestic violence complaint was filed.

While defendant drove plaintiff to the hospital where she worked on August 17, 2020, the parties continued an argument, which had begun the prior day. Their son was in the car at the time. Defendant accused plaintiff of "certain conduct" that occurred over the weekend, which she denied doing, and thereafter called her "numerous times" after she arrived at work. Defendant continued to call plaintiff while she was at work and then began calling her co-workers, questioning them about her location and hours of employment. Plaintiff did not want to speak to him. After finally taking one of his calls, defendant led plaintiff to believe that something was wrong with their son.

Defendant returned to plaintiff's place of employment with their son. Plaintiff went outside to speak with defendant and evaluate their son. After observing the child "was perfectly fine," plaintiff realized defendant used the child's purported illness as a ruse to coerce her to go outside and speak to him. Afterward, defendant insisted on following plaintiff back into the hospital with their son, but she told him not to because of COVID-19 restrictions. Defendant ended up leaving after plaintiff told him she would call security.

A-0359-20

After completing her shift, defendant picked plaintiff up and they drove to his parents' home where their son stays when plaintiff is working. Their argument continued and escalated with defendant continuing to accuse plaintiff of "things . . . [she] wasn't doing." When she "stopped speaking," defendant "got himself all worked up." Upon arrival at the home of defendant's parents, plaintiff either knocked on the front door or rang the doorbell. Defendant "got in between [her] and the front door and he spit in [her] face."

Plaintiff testified there was "spit on [her] glasses" and "all over her face." She also mentioned this was "the second time in [their] relationship that he's done this," and she did not want to be with him anymore. He refused to allow her to leave, and a "melee" ensued between the parties and defendant's mother, who allegedly observed saliva on plaintiff's face. Plaintiff told defendant's mother, "this was it," "she did not want to be with him anymore," and plaintiff "needed to go back to his apartment and grab [her] things."

Since defendant would not allow plaintiff to leave the home, she reached for her cellular phone and informed him that she would call the police if he would not let her leave. A struggle ensued, and defendant grabbed the phone out of her hand. Defendant's mother then got in between the parties and pushed defendant off plaintiff. As a result of this altercation, plaintiff testified she

A-0359-20

sustained "scratches" and "a really big blood blister, a blood clot[,] in the palm of [her] hand." Thereafter, defendant's mother escorted plaintiff to the apartment so she could gather her and the child's belongings and convinced defendant to let them leave.

Defendant eventually left but proceeded to go to the residence of plaintiff's cousin, where plaintiff and the child were staying. According to plaintiff, defendant "was outside for almost an hour." Plaintiff claimed defendant refused to permit her to enter the cousin's residence with her suitcase until her cousin threatened to call the police if he did not leave the property. Defendant left but returned "two more times," ultimately leading to the police being contacted and coming to the residence of plaintiff's cousin.

On August 17, 2020, plaintiff obtained a TRO against defendant. The police photographed the blisters on her hand. At trial, plaintiff and defendant were self-represented. Plaintiff testified and gave her account of the August 16 and 17 incidents. In terms of the prior history of domestic violence between the parties, plaintiff testified that in April 2020, she called the police because defendant would not let her leave their home and then followed her to the bus stop. Because she does not drive, plaintiff testified that she relies upon public transportation.

5

Plaintiff also testified that she was concerned for her well-being and safety because despite the issuance of a TRO, defendant was "repeatedly calling [her] cell[ular] phone" and "showed up at [her] friend's home." She also testified that defendant contacted her out-of-state friends by phone, and it was in her "best interest right now" to obtain an FRO because plaintiff was concerned he might "come looking for [her]."

Defendant testified that the parties were "disagreeing" and he "was arguing" with plaintiff. He admitted being "upset at her" and that he "literally spit in her face" but "didn't mean to." Defendant further stated he "messed up" and "grabbed the phone from [plaintiff] because [he] didn't want her to call the police in [his] parents' house." In addition, defendant acknowledged he caused plaintiff's palm to "blister" and that he "was definitely wrong." No other witnesses testified. The judge admonished defendant during his testimony when he tried to directly apologize to plaintiff.

Following the close of evidence, the Family Part judge rendered a thorough oral decision. The judge summarized the evidence presented regarding domestic violence and analyzed the testimony pursuant to the framework established under Silver v. Silver, 387 N.J. Super. 112, 126 (App. Div. 2006). Based upon this assessment, the judge found plaintiff sustained her burden of

A-0359-20

proof by a preponderance of the credible evidence as to the predicate acts of harassment, N.J.S.A. 2C:33-4, and assault, N.J.S.A. 2C:12-1(a), satisfying the first <u>Silver</u> prong. After addressing the prior history of domestic violence between the parties in conjunction with the predicate acts proven by plaintiff, the judge analyzed the second <u>Silver</u> prong. The judge concluded an immediate danger existed in light of defendant's "power and control issues." The judge elaborated:

> And today I am concerned, and I've already expressed this to defendant because we started out with his having a personal communication with the plaintiff and then subsequently, quite frankly, trying to play upon her feelings in terms of this order being entered. And that's just not appropriate. And it concerns me because this is a courtroom. I know we're on Zoom but you're in a courtroom with a judge and you're acting that way.
>
> Plus, you've admitted to at least one violation of the order. And that's a concern. I share the concern that the plaintiff has that if you're not complying with a [c]ourt order that you're not to have contact with her, you know, what's to come from that. And I can tell you, sir, that a contempt on this order could wind you up sitting in jail. That's what's to come from that.

The judge found the issuance of an FRO was necessary to protect plaintiff from future acts of domestic violence by defendant. This appeal followed. On appeal, defendant argues:

A-0359-20

(1) the judge should not have issued an FRO even if there was a finding of a predicate act because the prior history of domestic violence was insufficient to support an FRO;

(2) the judge's decision must be reversed because it is not supported by adequate, substantial credible evidence; and

(3) the alleged acts of harassment lack proof of the requisite elements of the purpose to harass, a course of alarming conduct, or repeated acts intended to alarm or seriously annoy another person.

## II.

Our review of the Family Part judge's decision to enter a FRO in a domestic violence matter is limited. Peterson v. Peterson, 374 N.J. Super. 116, 121 (App. Div. 2005). "A reviewing court is bound by the trial court's findings 'when supported by adequate, substantial, credible evidence.'" Ibid. (quoting Cesare v. Cesare, 154 N.J. 394, 412 (1998)). "This deferential standard is even more appropriate 'when the evidence is largely testimonial and involves questions of credibility.'" L.M.F. v. J.A.F., Jr., 421 N.J. Super. 523, 533 (App. Div. 2011) (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)).

"Reversal is warranted only when a mistake must have been made because the trial court's factual findings are 'so manifestly unsupported by or inconsistent

with the competent, relevant and reasonably credible evidence as to offend the interests of justice[.]'" Elrom v. Elrom, 439 N.J. Super. 424, 433 (App. Div. 2015) (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)). However, we review de novo "the trial judge's legal conclusions, and the application of those conclusions to the facts[.]" Ibid. (quoting Reese v. Weis, 430 N.J. Super. 552, 568 (App. Div. 2013)).

In adjudicating a domestic violence case, the trial judge has a "two-fold" task. Silver, 387 N.J. Super. at 125. The judge must first determine whether the plaintiff has proven, by a preponderance of the evidence, that the defendant committed one of the predicate acts referenced in N.J.S.A. 2C:25-19(a) as conduct constituting domestic violence. Id. at 125-26. The judge must construe any such acts in light of the parties' history to better "understand the totality of the circumstances of the relationship and to fully evaluate the reasonableness of the victim's continued fear of the perpetrator." Kanaszka v. Kunen, 313 N.J. Super. 600, 607 (App. Div. 1998); see N.J.S.A. 2C:25-29(a)(1).

A finding of harassment requires proof that the defendant acted "with purpose to harass." N.J.S.A. 2C:33-4; see Silver, 387 N.J. Super. at 124. Although a purpose to harass may, in some cases, be "inferred from the evidence," and may be informed by "[c]ommon sense and experience[,]" a

finding by the court that the defendant acted with a purpose or intent to harass another is integral to a determination of harassment. State v. Hoffman, 149 N.J. 564, 577 (1997).

We note that purposeful conduct "is the highest form of mens rea contained in our penal code, and the most difficult to establish." State v. Duncan, 376 N.J. Super. 253, 262 (App. Div. 2005). Its establishment requires proof, in a case such as this, that it was the actor's "conscious object to engage in conduct of that nature or to cause [the intended] result." N.J.S.A. 2C:2-2(b)(1). A plaintiff's assertion that the conduct is harassing is not sufficient. J.D. v. M.D.F., 207 N.J. 458, 484 (2011). Further, a "victim's subjective reaction alone will not suffice; there must be evidence of the improper purpose." Id. at 487.

When deciding the issues of intent and effect, we are mindful of the fact that

> harassment is the predicate offense that presents the greatest challenges to our courts as they strive to apply the underlying criminal statute that defines the offense to the realm of domestic discord. Drawing the line between acts that constitute harassment for purposes of issuing a domestic violence restraining order and those that fall instead into the category of "ordinary domestic contretemps" presents our courts with a weighty responsibility and confounds our ability to fix clear rules of application.

A-0359-20

[Id. at 475 (citation omitted).]

"[T]he decision about whether a particular series of events rises to the level of harassment or not is fact-sensitive." Id. at 484.

The judge credited plaintiff's testimony over that of defendant. As to harassment, the judge reasoned that plaintiff proved the elements under N.J.S.A. 2C:33-4 because there was "trauma" to plaintiff's hand, he spit in her face, tried to prevent her from using her cellular phone, and did not want her to leave the home. Although the judge did not indicate which subsection of the harassment statute was applicable, it is unassailable that plaintiff's proofs satisfy subsection (a) insofar as defendant made communications that were "likely to cause annoyance or alarm."

Defendant's spitting in plaintiff's face and injury to her hand also satisfies subsection (b) of the harassment statute, subjecting another to "offensive touching," and (c), "engages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person." "A finding of a purpose to harass may be inferred from the evidence presented and from common sense and experience." H.E.S. v. J.C.S., 175 N.J. 309, 327 (2001) (quoting Hoffman, 149 N.J. at 577).

11

Based on her assessment, the judge also found that the predicate act of assault was proven. In pertinent part, the assault statute provides a person is guilty of assault if he or she "[a]ttempts to cause or purposely, knowingly or recklessly causes bodily injury to another." N.J.S.A. 2C:12-1(a)(1). The judge determined defendant's actions were done with purpose, power, and control.

Based upon our review of the record, we are satisfied that defendant's actions met the requirements of the harassment and assault statutes. The judge's decision was based upon substantial credible evidence in the record. Given our deferential standard of review, we discern no basis to disturb the judge's findings as to harassment and assault.

If a predicate offense is proven, the judge must then assess "whether a restraining order is necessary, upon an evaluation of the fact[or]s set forth in N.J.S.A. 2C:25-29(a)(1) to (6), to protect the victim from an immediate danger or to prevent further abuse." J.D., 207 N.J. at 475-76 (quoting Silver, 387 N.J. Super. at 126). The factors which the court should consider include, but are not limited to:

> (1) The previous history of domestic violence between the plaintiff and defendant, including threats, harassment and physical abuse;
>
> (2) The existence of immediate danger to person or property;

(3) The financial circumstances of the plaintiff and defendant;

(4) The best interests of the victim and any child;

(5) In determining custody and parenting time the protection of the victim's safety; and

(6) The existence of a verifiable order of protection from another jurisdiction.

[N.J.S.A. 2C:25-29(a).]

Here, the judge properly considered plaintiff's testimony on prior acts of domestic violence and addressed the statutory factors set forth in N.J.S.A. 2C:25-29(a). Based upon the substantial credible evidence in the record, the judge found the existence of immediate danger posed by defendant to plaintiff and that her fear was "reasonable." Defendant's conduct was not an isolated incident based on plaintiff's credible testimony that defendant harassed and assaulted her in the recent past. We discern no abuse of discretion or misapplication of the law in the issuance of the FRO for plaintiff's protection. The judge's determination that an FRO was necessary to protect plaintiff was well-founded. Defendant ignores the fact that the incident on August 17, 2020, was not "an isolated aberrant act." Peranio v. Peranio, 280 N.J. Super. 47, 54 (App. Div. 1995).

A-0359-20

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-0359-20