# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2337-23

J.A.-D.,

    Plaintiff-Respondent,

v.

F.A.,

    Defendant-Appellant.

_____

        Submitted June 4, 2025 – Decided July 28, 2025

        Before Judges DeAlmeida and Puglisi.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Union County, Docket No. FV-20-1195-24.

        Law Offices of Nazario & Parente, LLC, attorneys for appellant (Thales A. Nazario, on the brief).

        Respondent has not filed a brief.

PER CURIAM

Defendant F.A.[1] (Felix) appeals from the February 27, 2024 final restraining order (FRO) plaintiff J.A.-D. (Jessica) obtained against him pursuant to the Prevention of Domestic Violence Act, N.J.S.A. 2C:25-17 to -35. Because the trial court did not provide adequate reasons for its credibility determinations, we reverse the FRO, reinstate the temporary restraining order (TRO) and remand for further proceedings.

The parties are siblings who resided together at the time of the alleged predicate acts. On December 29, 2023, the parties were in a physical altercation. Afterwards, Jessica was granted a TRO against Felix, alleging predicate acts of harassment and assault.

On February 22 and 27, 2024, a Family Part judge conducted the FRO hearing, during which the parties were represented by counsel. Both parties and their respective spouses testified with the assistance of an interpreter.

Jessica testified that, the day before the incident, she accidentally bumped into Felix's wife, R.A. (Rachel), in the kitchen. The next morning, Felix confronted her about the kitchen incident, claiming she intentionally struck Rachel with the microwave door. Jessica testified, and reiterated on cross-

---

[1] We use initials and pseudonyms to protect the parties' privacy and maintain the confidentiality of the proceedings in accordance with Rule 1:38-3(d)(10).

A-2337-23

examination, Felix choked her with both hands for five minutes, then with one hand for six minutes, for a total of eleven minutes. She testified her husband, J.L. (Jeff), "immediately" came out of their bedroom with their nine-year-old daughter, and when asked how her husband responded, she answered, "He just put his hand, and I was telling him to let me go. She said he has a hand where he gets the dialysis."[2]

Jessica explained she defended herself by biting Felix's arm, which broke her tooth. She also sustained a scratch on her finger and a broken fingernail. Jessica took photographs of her mouth and fingers, which were admitted in evidence but not provided to us in the record. After the incident, she called the police and they arrested Felix.

Jeff testified he was in his bedroom and heard an argument, exited the bedroom within thirty or forty seconds, and saw Felix "had [Jessica] by the neck" with one hand. Jeff testified he was in the hallway "[t]hree, four, five minutes," telling Felix to let Jessica go but not physically intervening "because [he] didn't have the strength to interfere and separate" them. Although Jeff

---

[2] It is unclear whether Jessica or the interpreter said, "She said he has a hand where he gets the dialysis," and no one asked for clarification of the statement.

A-2337-23

testified Jessica had scratches on her neck, the record does not reflect photographs were taken of these alleged injuries.

Felix and Rachel provided a different version of events.

Rachel testified[3] that when Felix asked Jessica about the kitchen incident, Jessica became aggressive, grabbed Felix by the hand and bit him. She said Felix reacted by pulling his hand away but never had his hand near Jessica's throat. Rachel testified Jeff and his daughter "lunged" at Felix and pushed him against the wall while Jessica was still biting him, which caused her tooth to break. Rachel took photographs of the injuries to Felix's wrist[4] and fingers, and a scratch near his eye, which were admitted into evidence.

Felix testified that when he asked Jessica about the kitchen incident, she cursed at him, grabbed his hand and bit it, and hit him with her other hand. He said Jeff and his daughter came out of the bedroom, pulled him from behind and

---

[3] It is unclear why the court permitted Rachel to testify before Felix, which the court noted was "a little out of order," but said was "no problem." This procedure allowed Felix to hear his witness's testimony before he testified, and resulted in the court's finding Felix not credible, in part, because he molded his testimony to be consistent with Rachel's.

[4] When Rachel testified Felix's injuries were on his hand, the judge asked for clarification whether she meant his hand or wrist. The interpreter said, "So she just uses hand. She doesn't have a word for the wrist." Felix testified the injuries were to his wrist, which is consistent with the photograph in the record.

A-2337-23

pushed him against the wall, causing Jessica's tooth to break.  Felix testified the entire incident lasted about two minutes.

In rendering its decision, the court first defined the alleged predicate acts of harassment and assault, and then continued:

> So, I have here two divergent versions of what happened on December [29,] 2023.
>
> Obviously, that's [Jessica]'s side of the story and [Felix] and his wife's side of the story.  And I also have to consider the fact that his witness is indeed his wife.  But ultimately, there are credibility issues that must be addressed in this case.  All in all, I had some serious problems with [Felix]'s testimony.  With respect to what happened on the day in question, he changed his version . . . two times.  He first followed his wife's version that he went out there and there was nothing said and [Jessica] just bit him.[5]  Brought his hand to her mouth and bit him.
>
> And then, he testified extensively that there [were] a number of things said between the parties before there was any physical altercation.  And then he ended again with nothing was said and she just bit me, which was again, what the wife said.  And for me, it was totally unbelievable.  And so, the issue of credibility will control in this matter.  I find that he is guilty of harassment and offensive touching, and a simple assault, if not aggravated assault, which is what he was actually charged with criminally, because under the aggravated assault statute, the new part, the latest

---

5  While not raised by defendant, we note the court's findings regarding Felix's testimony is not supported by the transcript.

A-2337-23

part, strangulation, it could be a second-degree aggravated assault.

Although there was no history of domestic violence, given the violent nature of the predicate act, the court found the entry of an FRO was self-evident under Silver v. Silver, 387 N.J. Super. 112 (App. Div. 2006).

On appeal, Felix argues the court erred in failing to address the second prong of Silver and in finding Jessica met her burden to establish the predicate acts.

"In adjudicating a domestic violence case, the trial judge has a 'two-fold' task." J.D. v. A.M.W., 475 N.J. Super. 306, 313 (App. Div. 2023) (quoting Silver, 387 N.J. Super. at 125). First, the court must "determine whether the plaintiff has proven, by a preponderance of the evidence, that the defendant committed one of the predicate acts referenced in N.J.S.A. 2C:25-19(a)." Ibid. Then, the court must "assess 'whether a restraining order is necessary . . . to protect the victim from an immediate danger or to prevent further abuse.'" Ibid. (quoting J.D. v. M.D.F., 207 N.J. 458, 475-76 (2011)).

Our review of Family Part orders is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). "The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Id. at 411-12 (citing Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474,

A-2337-23

484 (1974)). A reviewing court will also not disturb the Family Part's factual findings and legal conclusions that flow from them unless they are "so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Ricci v. Ricci, 448 N.J. Super. 546, 564 (App. Div. 2017) (quoting Elrom v. Elrom, 439 N.J. Super. 424, 433 (App. Div. 2015)).

Deference is especially appropriate in bench trials "when the evidence is largely testimonial and involves questions of credibility." Cesare, 154 N.J. at 412 (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)). A trial judge who observes witnesses and listens to their testimony is in the best position "to make first-hand credibility judgments about the witnesses who appear on the stand." N.J. Div. of Youth & Fam. Servs. v. E.P., 196 N.J. 88, 104 (2008).

In rendering a decision, a judge is required to make specific findings of fact and state his or her conclusions of law. R. 1:7-4(a); see also Elrom, 439 N.J. Super. at 443 (requiring an adequate explanation for the basis of a court's action). "Failure to make explicit findings and clear statements of reasoning 'constitutes a disservice to the litigants, the attorneys, and the appellate court.'" Gnall v. Gnall, 222 N.J. 414, 428 (2015) (quoting Curtis v. Finneran, 83 N.J.

563, 569-70 (1980)). Moreover, "[m]eaningful appellate review is inhibited unless the judge sets forth the reasons for his or her opinion." N.J. Div. of Child Prot. & Permanency v. T.S., 463 N.J. Super. 142, 168 (App. Div. 2020) (quoting Salch v. Salch, 240 N.J. Super. 441, 443 (App. Div. 1990)).

Thus, although our standard of review is generally limited in this area, where inadequate fact findings are made or where issues are not addressed, we are constrained to remand for further proceedings. See Gormley v. Gormley, 462 N.J. Super. 433, 449 (App. Div. 2019) ("The omission of critical factual findings . . . requires a remand limited to this issue." (quoting Elrom, 439 N.J. Super. at 443)).

Applying these principles, we conclude the court failed to make specific credibility findings in accordance with Rule 1:7-4. See Pressler & Verniero, Current N.J. Court Rules, cmt. 1 on R. 1:7-4 (2025) (noting Rule 1:7-4(a) "requires specific findings of fact and conclusions of law"). Specifically, although the court rejected Felix's testimony as incredible, it did not explain why it found Jessica credible nor did it address the inconsistencies in her testimony.

As argued by defense counsel, the TRO indicated Jessica reported Felix choked her for five minutes; however, during the hearing she testified he choked her for five minutes with both hands, then for another six minutes with one hand.

This assertion is inconsistent with her testimony that Jeff "immediately" came out of the bedroom upon hearing the argument, and conflicts with Jeff's testimony that the entire incident only lasted between three and five minutes. While the court may have had valid reasons for reconciling these inconsistencies in Jessica's favor, they are not reflected in the record. And although the court expressed skepticism at accepting Rachel's testimony because she is Felix's spouse, it did not address the same concerns regarding Jeff's testimony. These omissions hamper our review and require a remand.

While we are constrained to reverse the FRO, nothing in our opinion should be construed as suggesting our view on the outcome of the remanded proceedings. Because we reverse the FRO based on the insufficient findings under the first prong of Silver, we need not consider defendant's arguments regarding the second prong of Silver.

The FRO is reversed and remanded for a new trial before a different judge. See R.L. v. Voytac, 199 N.J. 285, 306 (2009) ("Because the trial court previously made credibility findings, we deem it appropriate that the matter be assigned to a different trial court."). The TRO is reinstated and shall remain in effect until further order of the trial court. We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

9                                                                    A-2337-23